

# Exhibit 1-1

CYNTHIA L. JOHNSON, (Bar No. 014492)
Law Office of C.L. Johnson
11640 East Caron Street
Scottsdale, AZ 85259
Phone: (480) 381-7929
Fax: (480) 614-9414

Email: cynthia@jsk-law.com

*Attorney for Atlas Residential, LLC*

FILED
AMANDA STANHOPE
CLERK OF SUPERIOR COURT

2018 AUG -3 PM 12: 53

BY _____
DEPUTY EAM

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PINAL

ATLAS RESIDENTIAL, LLC,

                Plaintiff,

v.

DESERT VALLEY STEAM "CARPET
CLEANING" LLC; VICTOR GRANADO a/k/a
VICTOR LAZADO GRANADO and JANE DOE
GRANADO; JAMIE GRANADO and JANE DOE
GRANADO,

                Defendants.

Case No CV 201801357

**VERIFIED COMPLAINT**

**STEVEN J. FULLER**

    Plaintiff Atlas Residential, LLC ("Plaintiff" or "Atlas"), through undersigned counsel, for its Complaint against Defendants, hereby alleges as follows:

### PARTIES AND JURISDICTION

    1.    Plaintiff is an Arizona Limited Liability Company and at all times herein lawfully doing business in the State of Arizona.

2.      These causes of action arise with regard to certain real property located in Pinal County, Arizona.  Specifically the real property is commonly known as 601 N. D Street, Eloy Arizona 85131; and 603 N. D Street a/k/a 607 N. D Street, Eloy AZ 85131.  It is a 13-unit apartment complex (the "Real Property").

3.      Plaintiff is informed and believes Defendant Desert Valley "Steam Carpet" Cleaning, LLC ("Desert Valley") is an Arizona Limited Liability Company and at all times herein lawfully doing business in the State of Arizona.  The sole member of the Desert Valley, as listed with the Arizona Corporation Commission as Defendant, Victor L. Granado; *see*, http://ecorp.azcc.gov/Details/Corp?corpId=L12221754.

Plaintiff is informed that Defendant Victor Granado may have transferred his interest in Desert Valley to his son, Defendant Jamie Granado during the pendency of the bankruptcy, and therefore, such transfer is void.

4.      Desert Valley is currently in a Chapter 7 bankruptcy, 4:17-bk-13309-SHG.  The Automatic Stay imposed pursuant to 11 U.S.C. §362 was lifted by the Court on January 24, 2018.  In addition, the Chapter 7 Trustee abandoned the Real Property on or about April 20, 2018.  Therefore, the bankruptcy Court has no further jurisdiction over the Real Property which is the subject of this action.

5.      Defendants Victor Granado a/k/a Victor Lazado Granado and Jane Doe Granado are believe to be married individuals and residents of the State of

Arizona, acting at all times for themselves individually and on behalf of the marital community and for the benefit of the marital community.

6.     Defendants Jamie Granado and Jane Doe Granado are believe to be married individuals and residents of the State of Arizona, acting at all times for themselves individually and on behalf of the marital community and for the benefit of the marital community.

7.     Atlas believes jurisdiction is proper.

**GENERAL ALLEGATIONS**

8.     On or about February 26, 2015, Desert Valley borrowed $275,000.00 from KS StateBank to purchase the Real Property.  The principal of Desert Valley, Victor Granado, on behalf of Desert Valley, executed a Promissory Note (the "Note") agreeing to repay a $275,000.00 loan, plus interest.  A copy of the Original Promissory Note is attached as Exhibit 2 to Plaintiff's Application for Preliminary Injunction ("Preliminary Injunction") and incorporated by this reference

9.     To secure the payment of the Note, Desert Valley granted KS StateBank a security interest in the Real Property through a Deed of Trust that was perfected by recording with the Pinal County Recorder's Office, Arizona, on March 6, 2015 at Recorder's No. 2015-013815.  A copy of the Deed of Trust is attached to Plaintiff's Preliminary Injunction as Exhibit 3 incorporated by this reference.  The Deed of Trust encumbers real property located at 601 N. D Street, Eloy Arizona 85131; and 603 N. D Street a/k/a 607 N. D Street, Eloy AZ 85131 (the "Real Property").

1    10.    In addition Defendant Desert Valley assigned its rights to control,

2    possession and all rents to KS StateBank a separate Assignment of Rents, which was

3    perfected by recording on March 6, 2018 at Recorder's No. 2015-013816. The

4

5    Assignment of Rents is attached to Plaintiff's Preliminary Injunction as Exhibit 4 and

6    incorporated by this reference.

7    11.    On May 3, 2017 KS StateBank entered into a contract to sell and assign

8

9    its Note, Deed of Trust, Assignment of Rents and all other rights regarding the

10   same, with Atlas. When the transaction ("Sale and Assignment") between the

11   parties closed, the Note was endorsed; and both the Deed of Trust and Assignment

12

13   of Rents were assigned on May 4, 2017 at Recorder's No. 2017-031689 and 2017-

14   031690. The Assignments are attached to Plaintiff's Preliminary Injunction as

15   Exhibit 5 and incorporated by this reference.

16

17   12.    Prior to the Sale and Assignment, on or about March 10, 2017 a fire

18   broke out at the apartment complex and five (5) of the thirteen (13) units were

19   damaged by fire.

20

21   13.    The insured Defendant Victor Granado had already filed the insurance

22   claim with State Farm Fire and Casualty Company Bank ("State Farm") and had

23   been tendered two (2) checks totaling $158,191.06. State Farm issued the checks

24

25   to both KS StateBank and Defendant Victor Granado. Pursuant to the terms of

26   Defendant Victor Granado's insurance policy, the lien holder was the payee.

27

28

14. Thereafter, both KS StateBank and Defendant Victor Granado endorsed the checks and they were deposited into an account for KS State Bank. Immediately thereafter, Defendant Victor Granado demanded the Insurance Proceeds be given to him. When KS StateBank did not comply with his demands, Defendant Victor Granado interceded with State Farm and had State Farm issue stop payments on the two checks. The two (2) checks were returned to KS StateBank.

15. Defendant Victor Granado demanded State Farm pay the Insurance Proceeds solely to him as the insured. In addition, Defendant Victor Granado alerted State Farm to the fact that KS StateBank and Atlas had entered into a Sale and Assignment, thus alerting State Farm to the new lien holder, Atlas.

16. The Sale and Assignment specifically included the sale of all its rights in the insurance policy and proceeds.

17. After the transaction closed between KS StateBank and Atlas, the Insurance Policy renewed on June 9, 2017 with Atlas named as the mortgagee. State Farm reissued the two (2) checks, this time payable to Atlas as mortgagee payee, and Victor Granado the insured. Finally in July 2017 Victor Granado voluntarily endorsed the two (2) checks over to Atlas and they were deposited into Atlas's account on July 15, 2017.

18. Pursuant to its Deed of Trust Atlas elected to have the Real Property repaired. Defendant Desert Valley, by and through its principal, Defendant Victor

Granado, refused to repair the Real Property by hiring a licensed contractor.

Defendant Victor Granado further insisted the insurance proceeds be paid to him directly.

19.    Atlas was attempting to work with Defendant Victor Granado to get the Real Property repaired. However, the mortgage payments were not being paid and Defendant Victor Granado was collecting rents putting them in his personal pocket. Defendant Victor Granado also came up with a scheme to hire/use unlicensed contract labor to make the repairs and receive kickbacks.

20.    Defendant Victor Granado's demands for the Insurance Proceeds, together with his refusal to hire a licensed contractor for reconstruction, his refusal to pay the mortgage payments while still collecting rents caused Atlas to call the loan in default. Atlas therefore noticed a Trustee's Sale on June 16, 2017, setting the sale for September 15, 2017. The Notice of Trustee's Sale is attached to Plaintiff's Preliminary Injunction as Exhibit 6 and incorporated by this reference.

21.    On November 8, 2017, in order to stave off the foreclosure sale, Defendant Desert Valley filed a Chapter 7 Bankruptcy protection and the Automatic Stay, 11 U.S.C. §362, went into effect.

22.    On December 15, 2017, Bankruptcy Court entered an Order allowing Atlas, by virtue of its Assignment of Rents, the right, amongst others, to enter and take possession of the Real Property, demand, collect and receive rents; and

maintain and repair it. The Order is attached to Plaintiff's Preliminary Injunction as Exhibit 7 and incorporated by this reference.

23. At the time Atlas took over management of the Real Property, representatives found it in desperate shape. Necessary repairs were immediately required in order to make the units that were rented habitable. It was determined that the roof above units 1, 2 and 3 could not be repaired, but had to be replaced. There were two (2) non-functional swamp coolers on the roof, throwing off water and causing excessive damage. The fascia board all the way around the property was in desperate need of repair. All of these damages were not even caused by the fire. Of the units that were habitable, it was determined that they didn't even have fully operable electrical power and would require upgrades in order to function properly and to pass a City Code. Unit 4B was being entirely powered by an extension cord running through the wall from Unit B5 and had extensive plumbing issues. One "unit" was found to have been illegally converted from a storage room to a rentable "unit," and the electrical and plumbing failed to meet any kind of building code. The "unit" could not be rented and without it, the Real Property did not appear to have as many units as was portrayed.

24. On January 24, 2018 the Bankruptcy Court entered an Order granting Atlas Relief from the Automatic Stay over the Real Property in order to conduct its Trustee's Sale. The Order is attached to Plaintiff's Preliminary Injunction as Exhibit 8 and incorporated by this reference. The Bankruptcy Court however, did not grant

Stay Relief as to the Insurance Proceeds and therefore, the Atlas without the ability to repair the property determined it imprudent to sell the property due to the extensive damaged done by the fire and the state of disrepair of the remaining units. A deficiency on the loan balance was imminent if Atlas proceeded with the Trustee's Sale.

25.     On March 9, 2018 the principal for Defendant Desert Valley executed a Quit Claim Deed conveying the Real Property to Defendant Jamie Granado in violation of the terms of the Deed of Trust and to thwart the Trustee's Sale. The Quit Claim Deed was recorded at Recorder's No.: 2018-047793, and attached to Plaintiff's Preliminary Injunction as Exhibit 9 and incorporated by this reference.

26.     On April 20, 2018 the Trustee in Bankruptcy abandoned the Real Property to the Debtor, Desert Valley. The Trustee believed there was no equity in the property for the bankrupt estate.

27.     On May 22, 2018 the Bankruptcy Court entered an Order granting Atlas's request for authorization to use the insurance proceeds to repair the property. The Bankruptcy Court determined that Atlas was entitled to the Insurance Proceeds over the objection of Defendant Victor Granado and the Chapter 7 Trustee, as a the proceeds were a part of its security interest. The Order is attached to Plaintiff's Preliminary Injunction as Exhibit 10 and incorporated by this reference.

28. Thereafter, Atlas began reconstruction of the Real Property. Recently when Atlas undertook repair of the roof, some of block walls collapsed. Evidently, the block walls and not been reinforced with rebar to the surprise of the engineer and the contractor who had determined the building should have been able to sustain the load. Atlas' current belief is that, due to the lack of rebar and cement around the doors and windows, the building collapsed. This faulty construction must also be repaired. Atlas has made the claim to the insurance company, State Farm and they are investigating.

29. However, on July 25, 2018 Defendants Victor Granado and Jamie Granado commandeered the Real Property, drilled tenant door locks, threaten and intimidating the tenants, and otherwise unlawfully evicted tenants without due process unless they paid rent to them. In addition, Defendants unlawfully converted certain construction equipment and removed personal property relating to the rental of the units belonging to Plaintiff without permission and have refused to return the items.

30. Defendants Victor Granado and Jamie Granado have taken possession of the property and refused to allow Atlas's construction workers back onto the property, are siphoning off the rental income and have forcibly removed tenants from the property without right or due process.

## COUNT I

### (Declaratory Relief, A.R.S. §12-1831 et.seq.)

31.    Plaintiff Atlas re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-30 of this Complaint as if fully set forth herein.

32.    Plaintiff Atlas and all Defendants are each a "person" within the meaning of A.R.S. §12-1843 who are interested under, or whose rights status, or other legal relations are affected by the absolute Assignment of Rents recorded upon the Real Property.   Plaintiff Atlas is entitled, pursuant to A.R.S. §12-1832, to have determined in this proceeding the validity and construction of rights, status and obligations of the parties thereunder and to obtain a declaration of those rights and obligations.

33.    Based upon the foregoing, an Order is required to immediately declare that Atlas is the holder of the Assignment of Rents and entitled to immediate possession and control of the Real Property.  That Defendant Desert Valley and its principal, Victor Granado, voluntarily relinquished, intended and assigned to its title interest in possession and the rents to its lender.

34.    Further, that the Quit Claim Deed executed by Defendant Victor Granado was a fraudulent transfer indented to hinder and defraud Atlas and it is deemed void.

35.     That pursuant to the written terms of the Assignment of Rents, Defendants Desert Valley, Victor Granado and Jamie Granado have no right or claim on moneys collected as rents from tenants residing at the Real Property and they must be disgorged.  Additionally Defendants all, have no further or future right to control or possession of the Real Property, manage it or make any structural changes whatsoever.

36.     That based on the foregoing, an Order compelling Defendants Victor Granado and Jamie Granado, to return of Atlas's personal property taken illegally converted without right or permission.

37.     That pursuant to the written terms of the Assignment of Rents, Defendant's Victor Granado and Jamie Granado immediately stop their interference in Atlas's lease contracts with tenants residing at the Real Property.

**WHEREFORE**, Plaintiff Atlas respectfully prays that this Court accept jurisdiction of this Declaratory Judgment Action and issue an Order as follows:

A.     Declaring Atlas Residential, LLC is the assignee of KS StateBank the original lender and is the owner of the separate absolute Assignment of Rents executed by the borrower with the rights to enforce its provisions;

B.     Declaring Atlas is entitled to possession and control of the Real Property, that it is the manager, may collect rents, make repairs or otherwise protect the property the Real Property pursuant to its absolute Assignment of Rents;

C. Declaring that all moneys in cash or whatever form collected from the tenants residing on the Real Property be disgorged from Defendants all as they have no claim upon them;

D. Declaring the Quit Claim Deed executed by Defendant Victor Granado to Defendant Jamie Granado is void;

E. Declaring Defendants Victor Granado and Jamie Granado in violation of the Assignments of Rents and immediately stop their interference in Atlas's lease contracts with tenants residing at the Real Property.

F. For Plaintiff's reasonable attorney fees and costs in an amount not less than $4,000.00 in the event of default, pursuant to the terms of the Contract, or, in the alternative, pursuant to A.R.S. §§ 12-341.01 and 12-341, or otherwise.

G. For such other and further relief as seems just to this Court.

**RESPECTFULLY SUBMITTED** this 3rd day of August, 2018.

LAW OFFICE OF CYNTHIA L. JOHNSON

By: /s/Cynthia L. Johnson
Cynthia L. Johnson
*Attorney for Atlas Residential*

ORIGINAL of the foregoing
filed this 3rd day of August, 2018 at:

Clerk of the Pinal County Superior Court
971 Jason Lopez Circle,
Building A
P.O. Box 2730
Florence, AZ 85132.

1    **COPIES** of the foregoing to be
immediately served

2

3    Statutory Agent: Victor Granado
For Desert Valley "Steam Carpet" Cleaning, LLC

4    108 E 8TH ST
ELOY, AZ 85131

5    Via email to James Gentile: jjg@azlawyer.net

6    *Attorney for Desert Valley*

7
Victor and Jane Doe Granado

8    108 E 8TH ST
ELOY, AZ 85131

9    Via email to: jjg@azlawyer.net

10

11    Jamie and Jane Doe Granado
108 E 8TH ST

12    ELOY, AZ 85131
Via email to: jgranad@asu.edu

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CYNTHIA L. JOHNSON, (Bar No. 014492)
Law Office of C.L. Johnson
11640 East Caron Street
Scottsdale, AZ 85259
Phone: (480) 381-7929
Fax: (480) 614-9414

Email: cynthia@jsk-law.com

*Attorney for Atlas Residential, LLC*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| ATLAS RESIDENTIAL, LLC, | Case No. |
| Plaintiff, | |
| v. | |
| | **VERIFICATION** |
| DESERT VALLEY STEAM "CARPET CLEANING" LLC; VICTOR GRANADO a/k/a VICTOR LAZADO GRANADO and JANE DOE GRANADO; JAMIE GRANADO and JANE DOE GRANADO, | |
| Defendants. | |

STATE OF ARIZONA    )
                        ) ss
County of Maricopa    )

      I, Alfonso Larriva, mananging member of Atlas Residential LLC, verify under penalty of perjury that I have read the foregoing Complaint for Declaratory Judgment; know the contents thereof; that the same is true and correct to the best of my knowledge except for those matters therein upon information and belief, and as to those, I believe them to be true.

Alfonso Larriva

CYNTHIA L. JOHNSON, (Bar No. 014492)
Law Office of C.L. Johnson
11640 East Caron Street
Scottsdale, AZ 85259
Phone: (480) 381-7929
Fax: (480) 614-9414

Email: cynthia@jsk-law.com

*Attorney for Atlas Residential, LLC*

FILED

2018 AUG -3 PM 12: 53

BY _____
DEPUTY        EAM

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| ATLAS RESIDENTIAL, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>DESERT VALLEY STEAM "CARPET CLEANING" LLC; VICTOR GRANADO a/k/a VICTOR LAZADO GRANADO and JANE DOE GRANADO; JAMIE GRANADO and JANE DOE GRANADO,<br><br>                    Defendants. | Case No. CV2018013557<br><br>**CERTIFICATE OF COMPULSORY ARBITRATION (NOT SUBJECT TO)**<br><br>**STEVEN J. FULLER** |

The undersigned certifies that she knows the dollar limits and any other limitation set for the by the local rules of practice for the applicable superior court, and further certifies that his case is NOT subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

Dated: August 3 27, 2018.

LAW OFFICE OF CYNTHIA L. JOHNSON

By: /s/Cynthia L. Johnson
Cynthia L. Johnson
*Attorney for Plaintiff*

CONFORMED COPY FURNISHED

1   CYNTHIA L. JOHNSON, (Bar No. 014492)
2   Law Office of C.L. Johnson
    11640 East Caron Street
3   Scottsdale, AZ 85259
    Phone: (480) 381-7929
4   Fax: (480) 614-9414

5   Email: cynthia@jsk-law.com

6
    *Attorney for Atlas Residential, LLC*
7

8         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9             **IN AND FOR THE COUNTY OF PINAL**

10

11 | ATLAS RESIDENTIAL, LLC, | Case No. CV20180135?1 |
12 |           Plaintiff, | |
| v. | **APPLICATION WITH POINTS AND** |
13 | | **AUTHORITY FOR:** |
14 | DESERT VALLEY STEAM "CARPET | |
| CLEANING" LLC; VICTOR GRANADO a/k/a | **PRELIMINARY INJUNCTION TO** |
15 | VICTOR LAZADO GRANADO and JANE DOE | **COMPEL SPECIFIC PERFORMANCE** |
16 | GRANADO; JAMIE GRANADO and JANE DOE | |
| GRANADO, | **(Oral Argument Requested)** |
17 |           Defendants. | |
18

19                 **STEVEN J. FULLER**

20     COMES NOW Plaintiff, ATLAS RESIDENTIAL, LLC ("Plaintiff" or "Atlas") an

21
    Arizona limited liability company, who makes this Application seeking a
22

23   Preliminary Injunctions to Compel Specific Performance pursuant to contract

24   against Defendants, Desert Valley "Steam Carpet" Cleaning, LLC; Victor Granado

25
    a/k/a Victor Lazado Granado and Jane Doe Granado; Jamie Granado and Jane Doe
26

27   Granado ("Defendants"), it's agents, employees, representatives, successors and

28   assigns. This Application is made pursuant A.R.S. § 12-1801 et. seq. and A.R.S. § 12-

                 CONFORMED COPY FURNISHED
                           -1-

                                        RCP

809 and Arizona Rule of Civil Procedure 65 et. seq. on the grounds that specific performance of a contract is necessary to avoid irreparable injury and to protect real property pending trial on the merits of the case and a continuance of harassment of tenants which will lead to injury for which damages will not adequately compensate.

Specifically, Atlas requests the issuance of a Preliminary Injunction enforcing its rights under an absolute Assignment of Rents with regard to real property commonly known as and located at 601 North D Street, Eloy, AZ 85131; and 603 North D Street a/k/a 607 North D Street, Eloy, AZ 85131 (the "Real Property"). Proof of written notice is attached hereto as **Exhibit "1"**.

This Application is supported by the following Points & Authorities, the allegations of the Complaint, the Exhibits attached and the testimony at time of hearing and such other and further evidence as this Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF CASE.

This action concerns Real Property located in Pinal County. It is a 13-unit apartment complex that was noticed for Trustee's Sale on June 16, 2017 pursuant to A.R.S. §33-801 et.seq. Defendant Desert Valley "Steam Carpet" Cleaning LLC ("Desert Valley") borrowed $257,000.00 to purchase the Real Property. The principal for Desert Valley executed a Note, Deed of Trust and separate Assignment of Rents (the "loan documents") which were perfected by recording at the Pinal

-2-

County Recorder's Office. Thereafter, the loan documents were endorsed and assigned to Atlas. Desert Valley defaulted on its obligations. In order to avoid imminent foreclosure, Defendant Desert Valley filed for Chapter 7 bankruptcy protection on November 8, 2017, Case No.: 4:17-bk-13309-SHG.

On December 15, 2017, the Bankruptcy Court granted Atlas, by virtue of its Assignment of Rents, the right, amongst others, to enter and take possession of the Real Property, collect and receive rents; and maintain and repair it. Ever since that date, Atlas was actively maintaining the Real Property, repairing it and entering into written leases with tenants, collecting the rents.

However, on or about July 25, 2018 however, Defendants Victor Granado and Jamie Granado commandeered the Real Property by drilling tenant door locks, threaten and intimidating tenants, and otherwise unlawfully forcibly throwing them out without due process. In addition, Defendants unlawfully converted certain construction equipment and personal property related to the apartment complex belonging to Plaintiff without permission and have refused to return it.

## II.    STATEMENT OF FACTS.

1.      On or about February 26, 2015, Defendant Desert Valley borrowed $275,000.00 from KS StateBank to the Real Property. The principal for Desert Valley, Defendant Victor Granado executed a Promissory Note agreeing to repay $275,000.00 loan, plus interest. In addition, Defendant Victor Granado executed a

-3-

Commercial Guaranty, as the guarantor of the loan. The Note and Commercial Guaranty are attached as **Exhibit 2**.

2. To secure the payment of the Note, Defendant Desert Valley granted to KS StateBank a security interest in the real property through a Deed of Trust that was perfected by recording with the Pinal County Recorder's Office, Arizona, on March 6, 2015 at Recorder's No. 2015-013815. The Deed of Trust encumbers real property located at 601 North D Street, Eloy, AZ 85131; and 603 North D Street a/k/a 607 North D Street, Eloy, AZ 85131 (the "Real Property"). The Deed of Trust is attached as **Exhibit 3**.

3. In addition Defendant Desert Valley assigned its rights to all rents to KS StateBank a separate Assignment of Rents, which was perfected by recording on March 6, 2018 at Recorder's No. 2015-013816. The Assignment of Rents is attached as **Exhibit 4**.

4. On or about March 10, 2017 a fire broke out at the apartment complex and five (5) of the thirteen (13) units were damaged by fire.

5. On May 3, 2017 KS StateBank entered into a contract to sell and assign its Note, Deed of Trust, Assignment of Rents and all other rights regarding the same, with Atlas. When the transaction ("Sale and Assignment") between the parties closed, the Note was endorsed; and both the Deed of Trust and Assignment of Rents were assigned on May 4, 2017 at Recorder's No. 2017-031689 and 2017-031690. The Assignments are attached as **Exhibit 5**.

-4-

6.      The insured Defendant Victor Granado had already filed the insurance claim with State Farm Fire and Casualty Company Bank ("State Farm") and had been tendered two (2) checks totaling $158,191.06. State Farm issued the checks to both KS StateBank and Defendant Victor Granado. Pursuant to the terms of Defendant Victor Granado's insurance policy, the lien holder was the payee.

7.      Thereafter, both KS StateBank and Defendant Victor Granado endorsed the checks and they were deposited into an account for KS State Bank. Immediately thereafter, Defendant Victor Granado demanded the Insurance Proceeds be given to him.   When KS StateBank did not comply with his demands, Defendant Victor Granado interceded with State Farm and had State Farm issue stop payments on the two checks. The two (2) checks were returned to KS StateBank.

8.      Defendant Victor Granado demanded State Farm pay the Insurance Proceeds solely to him as the insured. In addition, Defendant Victor Granado alerted State Farm to the fact that KS StateBank and Atlas had entered into a Sale and Assignment, thus alerting State Farm to the new lien holder, Atlas.

9.      After the transaction closed between KS StateBank and Atlas, the Insurance Policy renewed on June 9, 2017 with Atlas named as the mortgagee. State Farm reissued the two (2) checks, this time payable to Atlas as mortgagee payee, and Victor Granado the insured. Finally in July 2017 Victor Granado

-5-

voluntarily endorsed the two (2) checks over to Atlas and they were deposited into Atlas's account on July 15, 2017.

10.     Pursuant to its Deed of Trust Atlas elected to have the Real Property repaired. Defendant Desert Valley, by and through its principal, Defendant Victor Granado, refused to repair the Real Property by hiring licensed contractors. Defendant Victor Granado further insisted the insurance proceeds be paid to him directly.

11.     Atlas was attempting to work with Defendant Victor Granado to get the Real Property repaired. However, the mortgage payments were not being paid and Defendant Victor Granado was collecting rents putting them in his personal pocket. Defendant Victor Granado also came up with a scheme to hire/use unlicensed contract labor to make the repairs and receive kickbacks.

12.     Defendant Victor Granado's demands for the Insurance Proceeds, his failure to hire a licensed contractor to make the necessary repairs, his failure to make mortgage payments while still collecting rents caused Atlas to call the loan in default. Atlas therefore noticed a Trustee's Sale on June 16, 2017, setting the sale for September 15, 2017. The Notice of Trustee's Sale is attached as **Exhibit 6**.

13.     On November 8, 2017, in order to stave off the foreclosure sale, Defendant Desert Valley filed a Chapter 7 Bankruptcy protection and the Automatic Stay, 11 U.S.C. §362, went into effect.

-6-

14. On December 15, 2017, Bankruptcy Court entered an Order allowing Atlas, by virtue of its Assignment of Rents, the right, amongst others, to enter and take possession of the Real Property, demand, collect and receive rents; and maintain and repair it. The Order is attached as **Exhibit 7**.

15. At the time Atlas took over management of the Real Property, representatives found it in desperate shape. Necessary repairs were immediately required in order to make the units that were rented habitable. It was determined that the roof above units 1, 2 and 3 could not be repaired, but had to be replaced. There were two (2) non-functional swamp coolers on the roof, throwing off water and causing excessive damage. The fascia board all the way around the property was in desperate need of repair. All of these damages were not even caused by the fire. Of the units that were habitable, it was determined that they didn't even have fully operable electrical power and would require upgrades in order to function properly and to pass a City Code. Unit 4B was being entirely powered by an extension cord running through the wall from Unit B5 and had extensive plumbing issues. One "unit" was found to have been illegally converted from a storage room to a rentable "unit," and the electrical and plumbing failed to meet any kind of building code. The "unit" could not be rented and without it, the Real Property did not appear to have as many units as was portrayed.

16. On January 24, 2018 the Bankruptcy Court entered an Order granting Atlas Relief from the Automatic Stay over the Real Property in order to conduct its

-7-

Trustee's Sale. The Order is attached as **Exhibit 8**. The Bankruptcy Court however, did not grant Stay Relief as to the Insurance Proceeds and therefore, the Atlas without the ability to repair the property determined it imprudent to sell the property due to the extensive damaged done by the fire and the state of disrepair of the remaining units. A deficiency on the loan balance was imminent if Atlas proceeded with the Trustee's Sale.

17.     On March 9, 2018 the principal for Defendant Desert Valley executed a Quit Claim Deed conveying the Real Property to Defendant Jamie Granado in violation of the terms of the Deed of Trust and to thwart the Trustee's Sale. The Quit Claim Deed was recorded at Recorder's No.: 2018-047793, attached as **Exhibit 9**.

18.     On April 20, 2018 the Trustee in Bankruptcy abandoned the Real Property to the Debtor, Desert Valley. The Trustee believed there was no equity in the property for the bankrupt estate. *See*, Exhibits 7 and 8.

19.     On May 22, 2018 the Bankruptcy Court entered an Order granting Atlas's request for authorization to use the insurance proceeds to repair the property. The Bankruptcy Court determined that Atlas was entitled to the Insurance Proceeds over the objection of Defendant Victor Granado and the Chapter 7 Trustee, as a the proceeds were a part of its security interest. The Order is attached as **Exhibit 10**.

-8-

20.     Thereafter, Atlas began reconstruction of the Real Property. Recently when Atlas undertook repair of the roof, some of block walls collapsed. Evidently, the block walls and not been reinforced with rebar to the surprise of the engineer and the contractor who had determined the building should have been able to sustain the load. Atlas' current belief is that, due to the lack of rebar and cement around the doors and windows, the building collapsed. This faulty construction must also be repaired. Atlas has made the claim to the insurance company, State Farm and they are investigating.

21.     However, on July 25, 2018 Defendants Victor Granado and Jamie Granado commandeered the Real Property, drilled tenant door locks, threaten and intimidating the tenants, and otherwise unlawfully evicted tenants without due process unless they paid rent to them. In addition, Defendants unlawfully converted certain construction equipment and removed personal property relating to the rental of the units belonging to Plaintiff without permission and have refused to return the items.

22.     Defendants Victor Granado and Jamie Granado have taken possession of the property and refused to allow Atlas's construction workers back onto the property, are siphoning off the rental income and forcibly removed tenants from the property without right or due process

-9-

## III.   LEGAL ARGUMENT.

Plaintiffs seek an Order compelling specific performance by Defendants that relinquishes their possession of the Real Property and return of its personal property. The power to grant an injunction is both inherent and statutory pursuant to A.R.S. § 12-1801 et. seq.; *Town of Chino Valley v. State Land Dept.*, 119 Ariz. 243, 580 P. 2d 704 (1978); *State ex rel, Portland Cement Asss'n*, 142 Ariz. 421, 690 P.2d140 (Ct. All. Div 1 1984). An injunction that restrains a party from breaching a contract is characterized as an order of specific performance. *The Power P.E.O., Inc. v Employees Ins. Of Wausau*, 201 Ariz. 559, 38 P.3d 1224 (Ct. App. Div. 1 2002).

The test for issuance of an injunction compelling specific performance under *Power P.E.O., Id.* is the existence of a binding contract; certain terms; equity by party seeking enforcement; balance of the hardships, [benefits v. harm]; and no adequate remedy at law. Applying this test there is no dispute that the contract is binding, its terms are certain, equity favors Atlas, Defendants have no hardship and there is no adequate remedy at law.

### A.   ATLAS HAS A BINDING CONTRACT, AN ABSOLUTE ASSIGNMENT OF RENTS.

The Assignment of Rents recorded on the Real Property runs with the land effective to any property owner. Its terms are clear, Defendant Desert Valley only has the right to remain in possession and control, operate and manage the Real Property so long as there is no default under the Note. *See*, Exhibit 4. Here, Defendant Desert Valley defaulted in 2017 and a Trustee's Sale was noticed. *See*,

-10-

Exhibit 6. The Bankruptcy Court was the first to recognize the legality of the Assignment of Rents and granted Atlas possession. Defendants' right to possession was extinguished due to default. It was a bargained for exchange that Defendants refuse to abide and act accordingly.

In this case, Atlas has a more than a lien against the Real Property granted in its deed of trust. Here, Atlas has a separate Assignment of the Rents that was executed by the borrower's principal, Defendant Victor Granado. It was an absolute assignment by trustor (Desert Valley) that was perfected which granted title and rights, amongst others, to possession, control and collection of rents. *See*, Exhibit 4.

The language in the agreement demonstrates intent to immediately transfer the assignor's rights and title to the rents and it was independent of the mortgage security. Therefore, pursuant to the terms of its Assignment or Rents, Atlas has the right to regain possession and control, operate and manage the Real Property.

## B. EQUITY FAVORS ATLAS

Atlas has acted equitably. Atlas has postponed the Trustee's Sale several times, been through the bankruptcy court process for months upon months where it was prohibited from repairing the damage caused by the fire. Atlas was then forced to litigate over the insurance proceeds with the Trustee and Defendant Victor Granado who were both making claims upon the money for various reasons. When the bankruptcy awarded the insurance proceeds, Atlas was finally able to

-11-

begin making repairs. Atlas has been pursuing its legal remedies peacefully and at great expense for over a year since Defendants defaulted on the loan.

On the other hand, Defendant Desert Valley declared bankruptcy to avoid foreclosure. Desert Valley's principal Defendant Victor Granado was granted a reprieve from this creditor where he continued collecting rents for several months unabated. When ordered to turn over the rents post petition, Defendant Granado refused. *See*, Exhibit 7. Thereafter Defendant Victor Granado continuously requested dismissal in an effort to thwart the power of the Court. Nevertheless, while still in bankruptcy, Defendant Victor Granado illegally exercised the Chapter 7 Trustee's ownership powers over Defendant Desert Valley and conveyed and transferred title of the Real Property to his son, Defendant Jamie Granado. That transfer and conveyance is void. *See, In re: Schwartz*, 954 F.2d 569 (1992). The ownership interest in Desert Valley is still held by the Chapter 7 Trustee.

The conveyance also violated the terms of the Deed of Trust as transfer of ownership is forbidden. These Defendants also violated A.R.S. § 44-1001 et.seq. which provides:

> Transfers fraudulent as to present creditors. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Defendants' conduct also constitutes a Class 6 Felony, A.R.S. §13-2204.

-12-

When Defendants violently commandeered the property, drilling locks where tenants were peaceably enjoying their premises, they were demanding rents from tenants who had leases with Atlas. They actually threaten, intimidated forcibly threw out tenants without first filing Forcible Detainer actions. Their actions do not evidence Defendants who have done equity. What these Defendants have done demonstrated their continuing efforts to skim off the rents and leave the property in total disrepair. These actions and their refusal to return Atlas's personal property demonstrates an absolute disregard for the law, rights of other people and their property.

Moreover, when Defendants commandeered the Real Property, they utilized the City of Eloy police to drive Atlas out, under the guise of title ownership in the name of Defendant Jamie Granado. Defendants transfer and conveyance of the title to the property was used to defraud Atlas out of its right to possession and control of the property pursuant to its absolute Assignment of Rents, used to allow Defendant Jamie Granado to skim the rents without paying on the underlying obligation and thwart the Trustee's Sale.

C.   THE BALANCE OF THE HARDSHIP STRONGLY FAVORS ATLAS

The balance of the hardship strongly favors Atlas. Defendant Desert Valley is in default under the terms of the Note. Defendant Victor Granado is the guarantor of the Note. He is personally liable on any deficiency after the Trustee's Sale and he is not protected by Arizona's anti-deficiency statute. A.R.S. § 33-814(G) and § 33-

-13-

729. There is no harm to Defendants Desert Valley or Victor Granado. As the rents are collected, pursuant to the Assignment of Rents, they get applied to the loan. Moreover, by allowing Atlas to use the insurance proceeds, which were awarded to Atlas, to restore and reconstruct the Real Property using licensed contractors, the property will bring the greatest fair market value at auction. It directly benefits Defendant Victor Granado in his Chapter 7 bankruptcy and the City of Eloy.

If specific performance is not granted, Atlas will lose its ability to protect this property. The evidence here is that that the Real Property was clearly being mismanaged by Defendants Desert Valley and Victor Granado. They had illegally converted storage room that was uninhabitable and improperly provided electrical to several of the units and generally permitted the property to fall into disrepair which likely caused the fire. Defendant's committed waste and will continue to commit waste as their behavior in commandeering the property demonstrates.

If specific performance is not granted, Atlas will lose the value of its security interest. Atlas has already committed the insurance proceeds to the reconstruction of the Real Property and was in the middle of reconstruction when Defendants began their tirade. Although the Stay has been lifted and the Real Property abandoned, Defendants Desert Valley and Victor Granado are still in Chapter 7 bankruptcy. Neither have funds to finish the required reconstruction. Allowing Defendants to remain in possession of the Real Property will mean further

-14-

deterioration, a continuation of it being run as a slum, and rents will not be used to pay down the note as is specified in the deed of trust.

Finally and most importantly, if specific performance is not granted, Atlas will lose its contractual rights to protect, manage, repair and collect the rents; rights the trustor (Desert Valley) absolutely relinquished at the time the loan was originated. The only hardship Defendants will suffer is their inability to put cash in their pockets at the expense of the poor people living there and the lender, consistent with the way he had previously neglected the property.

### D.    DAMAGES ARE AN INADEQUATE REMEDY

The Real Property was being run as a slum in the City of Eloy by these Defendants. Damages are an inadequate remedy here because both Defendants Desert Valley and Victor Granado are insolvent. These Defendants are in bankruptcy, Chapter 7 – total liquidation. Moreover, any foreclosure will extinguish Atlas's rights under the Assignment of Rents, its right to possession and control, operations and management; its right to rebuild the property and sell it at the highest bid price in order to cover the debt.

In addition, the public's interest is best serviced if the borrowers follow the terms of the Deed of Trust and Assignment of Rents. Defendants (all) have interrupted the paying tenants' peaceable enjoyment of their units. Defendants have demanded rents from them without due process or lawful eviction.

-15-

Ever since taking over this loan, Atlas has been dealing with these Defendants who have demonstrated absolute defiance of their obligations, failure to follow rules and duties owed to others. The public interest is best served by allowing Atlas to continue its management and construction of the Real Property, which was allowed to fall into slum conditions by these Defendants.

**D.  DEFENDANTS SHOULD BE ENJOINED FROM RETURNING TO THE PROPERTY**

The Court may enjoin, by negative injunction, actual or threatened wrongful conduct by a party in the Courts sound discretion. *See, Valley Medical Specialists v. Farber*, 194 Ariz. 363, 982 P.2d 1277 (1999). The factors to be determined are the strong likelihood of success on the merits; the possibility of irreparable harm; and a balance of hardships *Arizona Ass. Of Providers for Persons with Disabilities v State*, 223 Ariz. 6; 219 P. 3d 216 (Ct. App. Div. 1 2009) review denied, (June 1, 2009); *Lafaro v. Cahill,* 203 Ariz. 482; 56 P.3d 56 (Ct. App. Div. 1 2002); *Kromko v. City of Tucson,* 202 Ariz. 499, 47 P.3d 1137 (Ct. App. Div. 2); The *Power P.E.O. Inc., v. Employees, (Sup.* 2002).

It is Plaintiffs burden to show the reasonable expectation that future events of harassment will occur. *SAL, Leasing, Inc. v. State ex rel. Napolitano*, 198 Ariz. 434, 10 P. 3d 1221 (Ct. App. Div. 1 2002). Plaintiff has shown the likelihood of further harassment by the fact that Defendants have engaged in multiple acts and to gain control over the Real Property. Either by endless legal action or force, Defendants

-16-

1  actions demonstrate absolute defiance for the rights of others all in pursuit for cash

2  in hand.

3      Because Plaintiff has an absolute Assignment of Rents to which the

4

5  Defendants are bound, the likelihood is great Plaintiff will prevail. The same factors

6  as stated above in support of the request for specific performance apply as well;

7  there is great harm to Plaintiffs and no harm to Defendants. There is the possibility

8

9  of irreparable harm. As a result, the Court should exercise its discretion and grant

10  an order restraining Defendants' ongoing and further harassment.

11

## CONCLUSION

12

13      The factors necessary for the issuance of a preliminary injunction for specific

14  enforcement of its contractual rights and restraining Defendants, and the

15

16  Defendants agents, employees, representatives, successors and assigns from

17  continuing to commandeer the Real Property are all present.

18      Plaintiff has done all it can do by making written demands for compliance

19

20  which have been ignored. Therefore, it is respectfully requested this Court grant a

21  Preliminary Injunction for the reasons set forth above.

22      **RESPECTFULLY SUBMITTED** this 3rd day of August, 2018.

23                          LAW OFFICE OF CYNTHIA L. JOHNSON

24

25                          By: /s/ Cynthia L. Johnson

26                          Cynthia L. Johnson
                            *Attorney for Atlas Residential*
27

28

-17-

ORIGINAL of the foregoing
filed this 3rd day of August, 2018 at:

Clerk of the Pinal County Superior Court
971 Jason Lopez Circle,
Building A
P.O. Box 2730
Florence, AZ 85132.

**COPIES** of the foregoing to be
immediately served

Statutory Agent: Victor Granado
For Desert Valley "Steam Carpet" Cleaning, LLC
108 E 8TH ST
ELOY, AZ 85131
Via email to James Gentile: jjg@azlawyer.net
*Attorney for Desert Valley*

Victor and Jane Doe Granado
108 E 8TH ST
ELOY, AZ 85131
Via email to: jjg@azlawyer.net

Jamie and Jane Doe Granado
108 E 8TH ST
ELOY, AZ 85131
Via email to: jgranad@asu.edu

-18-

# EXHIBIT 1



# GMail
by Google

Cynthia Johnson <cynthia@jsk-law.com>

---

## In re: Desert Valley Steam Carpet Cleaning, LLC
3 messages

---

**Cynthia Johnson** <cynthia@jsk-law.com>             Wed, Aug 1, 2018 at 3:29 PM
To: James Gentile <jjg@azlawyer.net>

Hi James,

I just saw your motion to withdraw on the ECF System.
I am filing a TRO and Complaint against your client in the Pinal County Superior Court on Friday.

I am required to give Notice
Thus, I either need to give Notice to you or require your permission to contact your client directly.

Unless you know of another lawyer that is representing them?

Thank you for your assistance

--
*Cynthia L. Johnson, Esq.*
Law Office of Cynthia L. Johnson
(480) 381.7929

cynthia@JSK-law.com

This electronic mail transmission contains information from the law firm of Cynthia L. Johnson that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 381-7929. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein. Thank you.

This correspondence may also be an attempt to collect a debt. Any information obtained will be used for that purpose. Therefore, you are now communicating with a debt collector. Unless, within 30 days after receipt of this Notice, you dispute the validity of the debt, or any portion thereof, the debt will be assumed valid. If you notify this Office, in writing within the 30-day period that the debt, or any portion thereof is disputed, this Office will obtain verification of the debt or a copy of the judgment against you and a copy of such verification or judgment will be mailed to you. Upon a written request within the 30-day period, this Office will provide you with the name and address of the original creditor, if different from the current creditor.

---

**James Gentile** <jjg@azlawyer.net>             Wed, Aug 1, 2018 at 3:59 PM
To: Cynthia Johnson <cynthia@jsk-law.com>

Hello Cynthia,

I do not know of another lawyer representing Him (Victor only). So...
I'd say that you should contact Him directly.....but, in the interest of keeping the peace...if you wish, I would be willing to try to deliver the documents to Victor. (Whatever you think best.)

Jaime has been told that I NEVER HAVE and DO NOT currently represent him.

Sorry I didn't get to meet you yesterday, but given the circumstances, it was probably best.

Thank you,

Jim Gentile

Sent from JJG@AZLAWYER.net
[Quoted text hidden]

---

**Cynthia Johnson** <cynthia@jsk-law.com>                              Wed, Aug 1, 2018 at 4:45 PM
To: James Gentile <jjg@azlawyer.net>

Thank you James

It was best not to talk.  Jamie Granado has a tendency towards violence and has threatened me previously outside of the courtroom. Your associate interceded and apologized for his behavior.

Security was even alerted for this hearing - I'm not sure how they heard unless the judge alerted them.

I will send The TRO and Complaint along to you as soon as I finish.
Adam says your great, so I'll take his word

I have Jamie Granado's email.

Thank you again
[Quoted text hidden]

 **Gmail** <br> by Google

Cynthia Johnson <cynthia@jsk-law.com>

## Atlas Residential LLC vs. Desert Valley "Steam Carpet" Cleaning LLC et.al
1 message

**Cynthia Johnson** <cynthia@jsk-law.com>        Fri, Aug 3, 2018 at 6:22 AM
To: Jamie Granado <jgranad@asu.edu>

Mr. Granado,

I will be filing the attached Application for Preliminary Injunctiion for Specific Performance, OSC, Order Granting, Summons, Certificate of Compulsory Arbitration and Exhibits 1-10 this morning in the Pinal County Superior Court.

At the time of filing, Pinal County assigns a judge and evidence is heard. If you would like to be heard in this matter, they will be required to appear.

Mr. Gentile has

📄 **EXHIBIT 3.pdf**

📄 **EXHIBIT 4.pdf**

agreed, you will accept service on behalf of Defendant's Desert Valley and Victor Granado and deliver the following to him

As soon as I get back to my office after filing, I will send you the stamped copies.

--

***Cynthia L. Johnson, Esq.***
Law Office of Cynthia L. Johnson
(480) 381.7929

cynthia@JSK-law.com

This electronic mail transmission contains information from the law firm of Cynthia L. Johnson that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 381-7929. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein. Thank you.

This correspondence may also be an attempt to collect a debt. Any information obtained will be used for that purpose. Therefore, you are now communicating with a debt collector. Unless, within 30 days after receipt of this Notice, you dispute the validity of the debt, or any portion thereof, the debt will be assumed valid. If you notify this Office, in writing within the 30-day period that the debt, or any portion thereof is disputed, this Office will obtain verification of the debt or a copy of the judgment against you and a copy of such verification or judgment will be mailed to you. Upon a written request within the 30-day period, this Office will provide you with the name and address of the original creditor, if different from the current creditor.

**15 attachments**

 **TRO.pdf**
695K

**EXHIBIT 1.pdf**
167K

**EXHIBIT 2.pdf**
13319K

**EXHIBIT 5.pdf**
311K

**EXHIBIT 6.pdf**
201K

**EXHIBIT 7.pdf**
673K

**EXHIBIT 8.pdf**
411K

**EXHIBIT 9.pdf**
150K

**EXHIBIT 10.pdf**
677K

**Order Granting TRO.pdf**
430K

**OSC.pdf**
424K

**Summons - Jamie Granado.pdf**
434K

**Complaint.pdf**
472K

**Verification Signed.pdf**
182K

**Certificate of Compulsory Arbitration.pdf**
413K



Cynthia Johnson <cynthia@jsk-law.com>

---

## Atlas Residential LLC vs. Desert Valley "Steam Carpet" Cleaning LLC et.al
1 message

---

**Cynthia Johnson** <cynthia@jsk-law.com>      Fri, Aug 3, 2018 at 6:22 AM
To: James Gentile <jjg@azlawyer.net>

Good morning James,

I will be filing the attached Application for Preliminary Injunctiion for Specific Performance, OSC, Order Granting, Summons, Certificate of Compulsory Arbitration and Exhibits 1-10 this morning in the Pinal County Superior Court.

At the time of filing, Pinal County assigns a judge and evidence is heard. If Defendants would like to be heard in this matter, they will be required to appear.
So, if you will kindly pass that message along

As agreed, you will accept service on behalf of Defendant's Desert Valley and Victor Granado and deliver the following to him

As soon as I get back to my office after filing, I will send you the stamped copies.

I will be emailing the same to Defendant Jamie Granado separately

Again, thank you.

📄 **EXHIBIT 3.pdf**

📄 **EXHIBIT 4.pdf**

--

*Cynthia L. Johnson, Esq.*
Law Office of Cynthia L. Johnson
(480) 381.7929

cynthia@JSK-law.com

This electronic mail transmission contains information from the law firm of Cynthia L. Johnson that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 381-7929. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.  Thank you.

This correspondence may also be an attempt to collect a debt.  Any information obtained will be used for that purpose. Therefore, you are now communicating with a debt collector. Unless, within 30 days after receipt of this Notice, you dispute the validity of the debt, or any portion thereof, the debt will be assumed valid.  If you notify this Office, in writing within the 30-day period that the debt, or any portion thereof is disputed, this Office will obtain verification of the debt or a copy of the judgment against you and a copy of such verification or judgment will be mailed to you.  Upon a written request within the 30-day period, this Office will provide you with the name and address of the original creditor, if different from the current creditor.

**16 attachments**

**TRO.pdf**
695K

**EXHIBIT 1.pdf**
167K

**EXHIBIT 2.pdf**
13319K

**EXHIBIT 5.pdf**
311K

**EXHIBIT 6.pdf**
201K

**EXHIBIT 7.pdf**
673K

**EXHIBIT 8.pdf**
411K

**EXHIBIT 9.pdf**
150K

**EXHIBIT 10.pdf**
677K

**Order Granting TRO.pdf**
430K

**OSC.pdf**
424K

**Summons - Desert Valley.pdf**
434K

**Summons - Victor Granado.pdf**
434K

**Complaint.pdf**
472K

**Verification Signed.pdf**
182K

**Certificate of Compulsory Arbitration.pdf**
413K

# EXHIBIT 2



0000000000005480973%0955%02-26-2015%D0345070

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $275,000.00 | 02-26-2015 | 02-26-2035 | 5480973 | 1D / 75 | D0345070 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** DESERT VALLEY STEAM "CARPET CLEANING" LLC
108 EAST 8TH STREET
ELOY, AZ 85131-2056

**Lender:** KS StateBank
Phoenix Branch
3877 North 7th Street, Suite 150
Phoenix, AZ 85014
(800) 588-6805

---

**Principal Amount: $275,000.00**  Date of Note: **February 26, 2015**

**PROMISE TO PAY.** DESERT VALLEY STEAM "CARPET CLEANING" LLC ("Borrower") promises to pay to KS StateBank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Seventy-five Thousand & 00/100 Dollars ($275,000.00), together with interest on the unpaid principal balance from February 26, 2015, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 60 monthly consecutive principal and interest payments in the initial amount of $1,908.72 each, beginning March 26, 2015, with interest calculated on the unpaid principal balances using an initial interest rate of 4.890% per annum based on a year of 360 days; and 180 monthly consecutive principal and interest payments in the initial amount of $1,908.73 each, beginning March 26, 2020, with interest calculated on the unpaid principal balances using an interest rate based on the The Weekly Average Yield on US Treasury Securities, adjusted to a constant maturity of one year as made available by the Federal Reserve Board (currently 0.240%), plus a margin of 4.000%, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 4.890% per annum based on a year of 360 days. Borrower's final payment will be due on February 26, 2035 and will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST RATE REVIEW DATE.** I agree to pay interest on the outstanding principal balance at the current rate until the first rate change date of February 26, 2020 and the rate and payment will be reviewed annually thereafter.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this loan will be 4.890%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the The Weekly Average Yield on US Treasury Securities, adjusted to a constant maturity of one year as made available by the Federal Reserve Board (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each year. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 0.240% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.890% per annum or more than the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**EFFECTIVE RATE.** Borrower agrees to an effective rate of interest that is the rate specified in this Note plus any additional rate resulting from any other charges in the nature of interest paid or to be paid in connection with this Note.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: KS StateBank, 1010 Westloop Manhattan, KS 66502.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $100.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 21.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. However, Borrower will only pay attorneys' fees of an attorney not Lender's salaried employee, to whom the matter is referred after Borrower's default. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arizona without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Arizona.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Maricopa County, State of Arizona.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by

(A) DEED OF TRUST DATED FEBRUARY 26, 2015
    (601 NORTH D STREET, ELOY, ARIZONA; AND 603 NORTH D STREET A/K/A 607 NORTH D STREET, ELOY, ARIZONA)  $275,000.00

(B) ASSIGNMENT OF RENTS DATED FEBRUARY 26, 2015
    (601 NORTH D STREET, ELOY, ARIZONA; AND 603 NORTH D STREET A/K/A 607 NORTH D STREET, ELOY, ARIZONA)

(C) UNLIMITED UNSECURED GUARANTY DATED FEBRUARY 26, 2015 FROM VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: KS StateBank 1010 Westloop Manhattan, KS 66502.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

DESERT VALLEY STEAM "CARPET CLEANING" LLC

By: _____
   VICTOR GRANADO A/K/A VICTOR LOZADO
   GRANADO, Manager of DESERT VALLEY STEAM
   "CARPET CLEANING" LLC

**LENDER:**

KS STATEBANK

X _____
   Frank X. Coumides, Senior Vice President

LaserPro, Ver. 14.5.10.004 Copr. D+H USA Corporation 1997, 2015  All Rights Reserved  - AZ  C:\APPS\Variant\CFI\LPL\D20 FC  TR-39433  PR-2

# ● COMMERCIAL GUARANTY ● 1/u

| Principal | Loan Date | Maturity | Loan No | Call / Coll 1D / 75 | Account | Officer *** | Initials |
|-----------|-----------|----------|---------|----------------------|---------|-------------|----------|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " **** " has been omitted due to text length limitations.

**Borrower:** DESERT VALLEY STEAM "CARPET CLEANING"
LLC
108 EAST 8TH STREET
ELOY, AZ 85131-2056

**Lender:** KS StateBank
Phoenix Branch
3877 North 7th Street, Suite 150
Phoenix, AZ 85014
(800) 588-6805

**Guarantor:** VICTOR GRANADO A/K/A VICTOR LOZADO
GRANADO
108 EAST 8TH STREET
ELOY, AZ 85231-2056

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to

**Tax Returns.** As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D)  to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

In addition to the waivers set forth above, Guarantor expressly waives, to the extent permitted by Arizona law, all of Guarantor's rights under sections 12-1641 through 12-1646 inclusive, 44-142 of the Arizona Revised Statutes, and Rule 17(f) of the Arizona Rules of Civil Procedure, as now enacted or hereafter modified, amended or replaced.  If the Indebtedness or this Guaranty is secured by real property collateral, then Guarantor expressly waives, to the extent permitted by Arizona law, all of Guarantor's rights under Sections 33-814 and 33-729 of the Arizona Revised Statutes, including, without limitation, any right to a fair market value hearing or action to determine a deficiency judgment after a foreclosure sale of any such real property collateral, including any land and improvements.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty.

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. However, Guarantor will only pay attorneys' fees of an attorney not Lender's salaried employee, to whom the matter is referred after Guarantor's default. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arizona without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Maricopa County, State of Arizona.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not

postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means DESERT VALLEY STEAM "CARPET CLEANING" LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means KS StateBank, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 26, 2015.

GUARANTOR:

X _____
VICTOR GRANADO A/K/A VICTOR LOZADO
GRANADO

LaserPro, Ver. 14.5.10.004 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved - AZ C:\APPS\system\CFI\LPL\E2LFC TR-28483 PR-2

# EXHIBIT 3

*Deed of Trust*
601 North D Street, Eloy, AZ and
603 AKA 607 North D Street, Eloy, AZ
$275,000.00

D0345070
2-26-15

**OFFICIAL RECORDS OF**
**PINAL COUNTY RECORDER**
**VIRGINIA ROSS**

DATE/TIME: 03/06/2015 0830
FEE:                    $19.00
PAGES:                      15
FEE NUMBER:   2015-013815

**STEWART TITLE & TRUST OF PHOENIX**

RECORDATION REQUESTED BY:
  KS StateBank
  Phoenix Branch
  3877 North 7th Street, Suite 150
  Phoenix, AZ  85014

WHEN RECORDED MAIL TO:
  KS StateBank
  1010 Westloop
  Manhattan, KS  66502

SEND TAX NOTICES TO:
  KS StateBank
  1010 Westloop
  Manhattan, KS  66502

01500-3184

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $275,000.00.

**THIS DEED OF TRUST** is dated February 26, 2015, among DESERT VALLEY STEAM "CARPET CLEANING" LLC, whose address is 108 EAST 8TH STREET, ELOY, AZ 85131-2056; An Arizona Limited Liability Company ("Trustor"); KS StateBank, chartered in the United States of America under the laws of the State of Kansas, whose address is Phoenix Branch, 3877 North 7th Street, Suite 150, Phoenix, AZ  85014 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and STEWART TITLE & TRUST OF PHOENIX, INC., organized or registered in the United States of America under any laws of the State of Arizona, whose address is 244 WEST OSBORN ROAD, PHOENIX, AZ 85013 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water and water rights flowing through, belonging or in anyway appertaining to the Real Property, and all of Trustor's water rights that are personal property under Arizona law, including without limitation all type 2 nonirrigation grandfathered rights (if applicable), all irrigation rights, all ditch rights, rights to irrigation district stock, all contracts for effluent, all contracts for Central Arizona Project water, and all other contractual rights to water, and together with all rights (but none of the duties) of Trustor as declarant under any presently recorded declaration of covenants, conditions and restrictions affecting real property; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in PINAL County, State of Arizona:

  LOTS 1, 2, 3 & 4, BLOCK 68 OF COTTON CITY PROPER, ACCORDING TO BOOK 2 OF MAPS, PAGE 8, RECORDS OF PINAL COUNTY, ARIZONA.

The Real Property or its address is commonly known as 601 NORTH D STREET, ELOY, ARIZONA 85131; AND 603 NORTH D STREET A/K/A 607 NORTH D STREET, ELOY, AZ  85131.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Trustor to Lender, or any one or more of them, as well as all claims by Lender against Trustor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Trustor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Deed of Trust secures all future advances made by Lender to Trustor whether or not the advances are made pursuant to a commitment. This Deed of Trust secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Trustor complies with all the terms and conditions of the Note or other loan agreement.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Beneficiary, at its option, but without obligation to do so, may correct any condition violating any applicable Environmental Law affecting the Property, and in doing so shall conclusively be deemed to be acting reasonably and for the purpose of protecting the value of its collateral,

and all costs of correcting a condition or violation shall be payable to Beneficiary by Trustor as provided in the Expenditures by Lender section of this Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Arizona law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes and assessments, including without limitation sales or use taxes in any state, local privilege or excise taxes based on gross revenues, special taxes, charges (including water and sewer), fines and impositions levied against Trustor or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust. Beneficiary shall have the right, but not the duty or obligation, to charge Trustor for any such taxes or assessments in advance of payment. In no event does exercise or non-exercise by Beneficiary of this right relieve Trustor from Trustor's obligation under this Deed of Trust or impose any liability whatsoever on Beneficiary.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits

set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, to the extent permitted by applicable law, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default and shall be exercisable by Lender to the extent permitted by applicable law.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender, or have otherwise been previously disclosed to and accepted by Lender in writing in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by

counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance without warranty and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. To the extent permitted by law, Trustor shall be and remain liable for any deficiency remaining after sale, either pursuant to the power of sale or judicial proceedings. Trustor expressly waives, to the extent permitted by Arizona law, all of Trustor's rights under Sections 33-814 and 33-729 of the Arizona Revised Statutes, including without limitation, any right to a fair market value hearing or action to determine a deficiency judgment after a foreclosure sale of the Real Property, including any land and improvements.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Insurance Policies.** Lender shall have the right upon an Event of Default, but not the obligation, to assign all of Trustor's right, title and interest in and to all policies of insurance on the Property and any unearned premiums paid on such insurance to any receiver or any purchaser of the Property at a foreclosure sale, and Trustor hereby appoints Lender as attorney in fact to assign and transfer such policies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal

fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. However, Trustor will only pay attorneys' fees of an attorney not Lender's salaried employee, to whom the matter is referred after Trustor's default. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of PINAL County, State of Arizona. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**FUTURE ADVANCES.** In addition to the Note, this Deed of Trust secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

Such future advances shall include, but not be limited to:

A. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Deed of Trust, whether or not this Deed of Trust is specifically referenced or such future

advance or future obligation is incurred for any purpose that was related or unrelated to the purpose of the Deed of Trust. If more than one person signs this Deed of Trust, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Deed of Trust even though all or part may not be yet advanced. All future advances and other future obligations are secured as if made on the date of this Deed of Trust.

B. All obligations Grantor owes to Lender, which may later arise to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

C. All additional sums advances and expenses incurred by Lender for insuring, preserving, or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust.

Nothing in this Deed of Trust shall constitute a commitment to make additional or future advances or loans in any amount. Any such commitment must be agreed to in a separate writing signed by Grantor and Lender.

This Deed of Trust shall not secure any other debt if Lender fails to give any required notice of the right of rescission.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arizona without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Arizona.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Maricopa County, State of Arizona.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall

Case 2:20-ap-00093-BKM    Doc 1-1    Filed 04/10/20    Entered 04/10/20 12:00:23    Desc
Exhibit 1-1    Page 59 of 112

not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Arizona as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means KS StateBank, and its successors and assigns.

**Borrower.** The word "Borrower" means DESERT VALLEY STEAM "CARPET CLEANING" LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or

potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means KS StateBank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated February 26, 2015, **in the original principal amount of $275,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means STEWART TITLE & TRUST OF PHOENIX, INC., whose address is 244 WEST OSBORN ROAD, PHOENIX, AZ 85013 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means DESERT VALLEY STEAM "CARPET CLEANING" LLC.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

DESERT VALLEY STEAM "CARPET CLEANING" LLC

By: _____

VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO,
Manager of DESERT VALLEY STEAM "CARPET CLEANING"
LLC

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ____Az_____ )
                                                    ) SS
COUNTY OF ____Maricopa_____ )

On this ___27th___ day of ___February___, 20 _15_, before me, the undersigned Notary Public, personally appeared **VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO, Manager of DESERT VALLEY STEAM "CARPET CLEANING" LLC**, and known to me to be member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _____          Residing at ___Phx, Az___

Notary Public in and for the State of ___Az___

My commission expires ___4/15/2016___



## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____     Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 14.5.10.004  Copr. D+H USA Corporation 1997, 2015.   All Rights Reserved.   - AZ
C:\APPS\Harland\CFI\LPL\G01.FC  TR-28423  PR-2

# EXHIBIT 4

Assignment of Rents

D0345070
2-26-15

601 North D Street, Eloy, AZ and
603 AKA 607 North D Street,
Eloy, AZ



**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
VIRGINIA ROSS**

DATE/TIME: 03/06/2015 0830
FEE: $10.00
PAGES: 6
FEE NUMBER: 2015-013816

**STEWART TITLE & TRUST OF PHOENIX**

RECORDATION REQUESTED BY:
 KS StateBank
 Phoenix Branch
 3877 North 7th Street, Suite 150
 Phoenix, AZ 85014

WHEN RECORDED MAIL TO:
 KS StateBank
 1010 Westloop
 Manhattan, KS 66502

SEND TAX NOTICES TO:
 KS StateBank
 1010 Westloop
 Manhattan, KS 66502

01500-3184

FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

**THIS ASSIGNMENT OF RENTS** dated February 26, 2015, is made and executed between DESERT VALLEY STEAM "CARPET CLEANING" LLC, whose address is 108 EAST 8TH STREET, ELOY, AZ 85131-2056; An Arizona Limited Liability Company (referred to below as "Grantor") and KS StateBank, chartered in the United States of America under the laws of the State of Kansas, whose address is 3877 North 7th Street, Suite 150, Phoenix, AZ 85014 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in PINAL County, State of Arizona:

 LOTS 1, 2, 3 & 4, BLOCK 68 OF COTTON CITY PROPER, ACCORDING TO BOOK 2 OF MAPS, PAGE 8, RECORDS OF PINAL COUNTY, ARIZONA.

The Property or its address is commonly known as 601 NORTH D STREET, ELOY, ARIZONA 85131; AND 603 NORTH D STREET A/K/A 607 NORTH D STREET, ELOY, AZ 85131.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. This Assignment secures, in addition to the amounts specified in the Note, future advances in an unlimited amount, together with all interest thereon, which future advances Lender is obligated to make so long as Grantor complies with all the terms and conditions of the Note or other loan agreement.

**THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

 **Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances,

and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Arizona and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, to the extent permitted by applicable law, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon

Default and shall be exercisable by Lender to the extent permitted by applicable law.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other

remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. However, Grantor will only pay attorneys' fees of an attorney not Lender's salaried employee, to whom the matter is referred after Grantor's default. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law. This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arizona without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the State of Arizona.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Maricopa County, State of Arizona.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal,

invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Arizona as to all Indebtedness secured by this Assignment.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means DESERT VALLEY STEAM "CARPET CLEANING" LLC.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means DESERT VALLEY STEAM "CARPET CLEANING" LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Assignment.

**Lender.** The word "Lender" means KS StateBank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated February 26, 2015, in the original principal amount of $275,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON FEBRUARY 26, 2015.

GRANTOR:

DESERT VALLEY STEAM "CARPET CLEANING" LLC

By: _____

VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO,
Manager of DESERT VALLEY STEAM "CARPET CLEANING"
LLC

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Az_ )
                                          ) SS
COUNTY OF _Maricopa_ )

On this _27th_ day of _February_, 20 _15_, before me, the undersigned Notary Public, personally appeared VICTOR GRANADO A/K/A VICTOR LOZADO GRANADO, Manager of DESERT VALLEY STEAM "CARPET CLEANING" LLC, and known to me to be member or designated agent of the limited liability company that executed the ASSIGNMENT OF RENTS and acknowledged the Assignment to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Assignment and in fact executed the Assignment on behalf of the limited liability company.

By _____     Residing at _Phx, Az_

Notary Public in and for the State of _Az_

My commission expires _4/15/2016_

TAMARA A. CAMANO
Notary Public - Arizona
Maricopa County
My Commission Expires
APRIL 15, 2016

---

LaserPro, Ver. 14.5.10.004   Copr. D+H USA Corporation 1997, 2015.   All Rights Reserved.   - AZ
C:\APPS\Harland\CFI\LPL\G14.FC TR-28423 PR-2

# EXHIBIT 5



**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
VIRGINIA ROSS**

DATE/TIME: 05/04/2017 1443
FEE:                    $9.00
PAGES:                      2
FEE NUMBER:  2017-031689

WHEN RECORDED RETURN TO:

Larry O. Folks, Esq.
Folks & O'Connor, PLLC
1850 North Central Avenue, Suite 1140
Phoenix, AZ 85004

## ASSIGNMENT OF BENEFICIAL INTEREST UNDER DEED OF TRUST

The undersigned, KS StateBank, chartered in the United States of America under the laws of the State of Kansas ("Assignor"), for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, conveys, transfers and assigns to Atlas Residential, LLC, an Arizona limited liability company ("Assignee"), all of Assignor's right, title and interest as Beneficiary in and to that certain Deed of Trust dated February 26, 2015, and recorded on March 6, 2015, with the County Recorder of Pinal County as Document No. 2015-013815 (the "Deed of Trust"). The Trustor under the Deed of Trust is Desert Valley Steam "Carpet Cleaning" LLC, an Arizona limited liability company and the Deed of Trust encumbers the real property (the "Property") described in the Deed of Trust. This Assignment shall also assign the obligations secured thereby to Assignee.

IN WITNESS WHEREOF, Assignor has executed this Assignment of Beneficial Interest Under Deed of Trust this _3_ day of May, 2017.

ASSIGNOR:

KS STATEBANK, chartered in the United States of America under the laws of the State of Kansas

By: _____
Printed Name: _Frank K. Carmides_
Title: _EVP_

05-74653.01

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

The foregoing instrument was acknowledged before me this 3 day of May, 2017, by Frank X Coumides, an EVP of KS StateBank, chartered in the United States of America under the laws of the State of Kansas, on behalf of the bank.



ADAM D. ZAHARCHUK
Notary Public - Arizona
Maricopa County
My Commission Expires
May 10, 2019

_____
Notary Public

My Commission expires:

_____5/10/2019_____

05-74653.01



**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
VIRGINIA ROSS**

DATE/TIME: 05/04/2017 1443
FEE:                    $9.00
PAGES:                     2
FEE NUMBER:  2017-031690

**WHEN RECORDED RETURN TO:**

Larry O. Folks, Esq.
Folks & O'Connor, PLLC
1850 North Central Avenue, Suite 1140
Phoenix, AZ 85004

## ASSIGNMENT OF INTEREST UNDER ASSIGNMENT OF RENTS

The undersigned, KS StateBank, chartered in the United States of America under the laws of the State of Kansas ("Assignor"), for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, conveys, transfers and assigns to Atlas Residential, LLC, an Arizona limited liability company ("Assignee"), all of Assignor's right, title and interest as Grantee in and to that certain Assignment of Rents dated February 26, 2015, and recorded on March 6, 2015, with the County Recorder of Pinal County as Document No. 2015-013816 (the "Assignment of Rents"). The Grantor under the Assignment of Rents is Desert Valley Steam "Carpet Cleaning" LLC, an Arizona limited liability company and the Assignment of Rents encumbers the rents generated by the real property (the "Property") described in the Assignment of Rents. This Assignment shall also assign the obligations secured thereby to Assignee.

IN WITNESS WHEREOF, Assignor has executed this Assignment of Interest Under Assignment of Rents this __3__ day of May, 2017.

ASSIGNOR:

KS STATEBANK, chartered in the United States of America under the laws of the State of Kansas

By: _____
Printed Name: _Frank X. Coumides_
Title: _EVP_

05-74653.01

STATE OF ARIZONA )
                        )  ss.
COUNTY OF MARICOPA )

The foregoing instrument was acknowledged before me this 3 day of May, 2017, by Frank X Coumides, an EVP of KS StateBank, chartered in the United States of America under the laws of the State of Kansas, on behalf of the bank.

ADAM D. ZAHARCHUK
Notary Public - Arizona
Maricopa County
My Commission Expires
May 10, 2019

_____
Notary Public

My Commission expires:

_____5/10/2019_____

05-74653.01

# EXHIBIT 6

OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
VIRGINIA ROSS

DATE/TIME: 06/16/2017 1425
FEE: $9.00
PAGES: 2
FEE NUMBER: 2017-043054

# EMPIRE WEST TITLE AGENCY

When recorded
Mail to:
Ron Herb
5420 W. Onyx Ave.
Glendale, AZ 85302

2017-743107½

## NOTICE OF TRUSTEE'S SALE
#TS 17-035 PINAL

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust recorded in the office of the County Recorder of Pinal County, Arizona, on 3-6-2015 in Pinal County, Arizona Recorder's number 2015-013815. **NOTICE! IF YOU BELIEVE THERE IS A DEFENSE TO THE TRUSTEE'S SALE OR IF YOU HAVE AN OBJECTION TO THE TRUSTEE'S SALE, YOU MUST FILE AN ACTION AND OBTAIN A COURT ORDER PURSUANT TO RULE 65, ARIZONA RULES OF CIVIL PROCEDURE, STOPPING THE SALE NO LATER THAN 5 PM MOUNTAIN STANDARD TIME OF THE LAST BUSINESS DAY BEFORE THE SCHEDULED DATE OF THE SALE, OR YOU MAY HAVE WAIVED ANY DEFENSES OR OBJECTIONS TO THE SALE. UNLESS YOU OBTAIN AN ORDER, THE SALE WILL BE FINAL AND WILL OCCUR AT PUBLIC AUCTION TO THE HIGHEST BIDDER AT THE COURTYARD BY THE MAIN ENTRANCE TO THE ARIZONA SUPERIOR COURT BUILDING, 971 JASON LOPEZ CIRCLE, BUILDING A, FLORENCE, ARIZONA 85132 ON SEPTEMBER 15, 2017, 11:00 AM ARIZONA TIME:**

Lots 1,2,3, and 4, Block 68. of Cotton City Proper, according to Book 2 of Maps, Page 8, records of Pinal County, Arizona

ACCORDING TO THE DEED OF TRUST OR INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. § 33-808 (C):

Identifiable Location per Deed of Trust: 601 N. D. Street, and 603 N. D Street, AKA 607 N. D Street Eloy, AZ 85131.

TAX PARCEL NUMBER: 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 and 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

ORIGINAL PRINCIPAL BALANCE: $275,000.00

NAME AND ADDRESS OF ORIGINAL TRUSTOR: Desert Valley Steam (Carpet Cleaning) LLC, 108 E 8th St. Eloy, AZ 85131.

NAME AND ADDRESS OF BENEFICIARY: Atlas residential LLC, an Arizona limited liability company, 6250 E. Cheney Dr. Paradise Valley, AZ 85253.



NAME AND ADDRESS OF TRUSTEE (as of date of recording of sale): Ronald B. Herb, licensed real estate broker 5420 W Onyx Ave. Glendale, AZ 85302. 602-488-1349   ronaldherb@gmail.com
QUALIFICATIONS TO BE TRUSTEE: Licensed Real Estate Broker in Arizona.

AGENCY REGULATION TRUSTEE: Arizona Dept. of Real Estate.

Dated this 6-15-2017

_____
Ronald B. Herb/Trustee

STATE OF ARIZONA          )
                          ) ss
COUNTY OF MARICOPA        )

    Acknowledged before me on 6-15-2017 by Ronald B. Herb, licensed real estate broker and trustee of the above described deed of trust.

SHERI L. MORRIS
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
November 27, 2020

_____
NOTARY PUBLIC

# EXHIBIT 7

1  CYNTHIA L. JOHNSON, (Bar No. 014492)
   Law Office of Cynthia L. Johnson
2  11640 East Caron Street
3  Scottsdale, AZ 85259
   Phone: (480) 381-7929
4  Fax: (480) 614-9414

5  Email: cynthia@jsk-law.com

6  *Attorney for Secured Creditor*

7              **IN THE UNITED STATES BANKRUPTCY COURT**

8              **FOR THE DISTRICT OF ARIZONA**

9

10 **In Re:**                              | **Chapter 7**

11 **DESERT VALLEY STEAM CARPET**          | **Order**
12 **CLEANING LLC,**                       | **Case No. 4:17-bk-13309-SHG**

13                  **Debtor.**            | (601 North D Street, Eloy, AZ 85131)

14         This matter comes before the Court as a result of the agreement set forth below

15 between the Trustee, Stanley J. Kartchner, for the bankruptcy estate and the secured

16

17 creditor, Atlas Residential, LLC (herein referred to as "Atlas" or "Lender"). The parties

18 having evidenced, by their respective counsels' signatures below, their stipulation and

19 agreement to the terms and conditions of this Stipulated Order allowing the secured

20

21 creditor to collect rents and manage the apartment complex, and the entry by this

22 Court of this order containing such terms, there Court hereby finds, concludes and

23 orders as follows:

24 **I.    FINDINGS.**

25

26         1.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. §157

27 (b)(2)(G).

28

Case 4:17-bk-13309-SHG    Doc 34    Filed 12/15/17    Entered 12/15/17 16:07:31    Desc
                  Main Document    Page 1 of 7

2.     Debtor filed its Chapter 7 bankruptcy petition on November 8, 2017 (the "Petition Date").

3.     The secured creditor, Atlas Residential LLC, is the beneficiary on a certain Deed of Trust and Assignment of Rents, recorded in the Pinal County Recorder's Office at Recorder's Nos.: 2017-031689 and 2017-031690, respectively ("Real Property").

4.     Debtor is the present record title holder of the Real Property.  The Real Property is a 13 unit apartment complex, located at 601 North D Street, Eloy, AZ 85131.

5.     A pre-petition and post-petition default occurred; and the Lender has the right to collect and receive rents.  For this purpose, Atlas Residential LLC has the following rights, powers and authority:

A.     Lender may send notices to any and all tenants of the Real Property advising them of the Assignment and directing all rents to be paid to it or its agent;

B.     Lender may enter upon and take possession of the property, demand, collect and receive from the tenants or from any other persons liable therefor, all of the rents, institute and carry on all legal proceedings necessary for the protection of the property, including such proceedings as may be necessary to recover possession of the property; collect rents and remove any tenant or tenants for other persons from the property;

C.     Lender may enter upon the property to maintain the Real Property and keep the same in repair; to pay the costs thereof and of all services of all

employees, including their equipment; and of all continuing costs and expenses of maintaining the property in proper repair and condition; and also to pay all taxes, assessments and water utilities and the premiums on fire and other insurance effected by the Lender on the property;

  D. Lender may do any and all things to execute and comply with the laws of the State of Arizona and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the property;

  E. Lender may rent or lease the whole or any part of the Real Property for such term or terms and on such conditions as Lender may deem appropriate;

  F. Lender may engage an agent(s) as Lender may deem appropriate, in Lender's name to rent and manage the property, including the collection and application of rents;

  G. Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

  6. The costs and expenses incurred by Lender in connection with the Real Property shall be for Debtor's benefit and applied to Debtor's account and Lender may pay such costs and expenses from the rents unless the expense exceeds $2,000 and under such circumstances, shall seek authority from the Trustee before incurring such expense. Lender, in its sole discretion, shall determine the application of any and all rents received it; and any such rents received by Lender which are not applied to such

Case 4:17-bk-13309-SHG Doc 34 Filed 12/15/17 Entered 12/15/17 16:07:31 Desc
Main Document  Page 3 of 7

Case 2:20-ap-00093-BKM Doc 1-1 Filed 04/10/20 Entered 04/10/20 12:00:23 Desc
Exhibit 1-1  Page 82 of 112

costs and expenses shall be applied to the indebtedness, pursuant to the loan documents, subject to review and approval of the Bankruptcy Court and Trustee. All expenditures made by the Lender under this Stipulation and not reimbursed from the rights shall become a part of the indebtedness secured by the loan document and shall be payable on demand, with interest at the Note rate and date of the expenditure until paid, subject to Bankruptcy Court approval and Trustee approval.

7.      The Trustee and Atlas have entered into this Stipulated Order to (i) preserve the value of the estate asset; (ii) avoid protracted and costly litigation over the collection of rents and maintenance of the property; (iii) adequately protect Atlas from the diminution of its interest in the Real Property; and (iv) the provide the Trustee of assurance that rents are being applied to the loan. The Trustee and Atlas believe this Stipulated Order to be in the best interests of the estate, Atlas and all creditors of the estate.

8.      All post-petition rents (November and December 2017) collected by Debtor, or Debtor's principal, Victor Granado, shall be immediately turned over to Lender.

9.      Except as provided in this Order, entry of this Order shall in no way impair or otherwise affect the respective rights and claims of Atlas to the Collateral under its Note and Deed of Trust (the "Loan Documents") or under applicable law, as those rights existed as of the Petition Date.

Pursuant to these Findings, the Court orders as follows:

Case 2:20-ap-00093-BKM   Doc 1-1   Filed 04/10/20   Entered 04/10/20 12:00:23   Desc
Exhibit 1-1   Page 83 of 112

A.    Atlas is granted all rights, powers and authority as stated in paragraphs 5(A-G) and 6 herein.

B.    All post-petition rents (December 2017) collected by Debtor, or Debtor's principal, Victor Granado, shall be immediately turned over to Lender.

C.    Pursuant to the agreement of the parties, the automatic stay is still in full force and effect.

D.    Except as expressly set forth herein, this Stipulated Order shall not operate as an adjudication of adequate protection or any other related rights asserted by any party in interest under 11 U.S.C. §§ 361, 362, or 363.  Further, this Order shall not prevent Atlas from moving for or obtaining any appropriate relief in this case, including the request of additional adequate protection of its interest and shall not prevent the Trustee from objecting to the claim of the Lender in the future

E.    Except as expressly provided in this Order, the terms and conditions of Atlas's Loan Documents shall remain in full force and effect, and Atlas shall have all of its rights and remedies thereunder, subject to the provisions of the Bankruptcy Code and any orders of this Court.

F.    The terms and provisions of this Stipulated Order and all stipulations and agreements by the parties affected hereby may not be modified except in writing, executed by each of the parties, and approved by the Court unless otherwise provided herein;

G.    The statements contained herein shall not constitute an admission that Atlas is adequately protected;

1   H.      Nothing contained herein shall constitute a waiver or modification of the

2   terms of the Loan Documents;

3   I.      This Stipulated Order may be executed in counterparts, all of which

4

5   together shall constitute one complete agreement and order.  Signatures sent by

6   facsimile transmission shall be effective in all respects as originals.

7           **DATED** THIS ____ day of December, 2017.

8

9                                  _____

10                                 The Honorable Scott H. Gan
                                   U.S. Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Approved and Agreed to this
_____ day of December, 2017:

**LAW OFFICE OF LANE & NACH, P.C.**

By: _____
Adam B. Nach,
*Attorney for Stanley J. Kartchner, Chapter 7 Trustee*

**LAW OFFICE OF CYNTHIA L. JOHNSON**

_____
Ms. Cynthia L. Johnson
*Counsel for Secured Creditor Atlas*

7

# EXHIBIT 8

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 7 |
| DESERT VALLEY STEAM CARPET CLEANING LLC, | Case No. 4:17-bk-13309-SHG |
| Debtor. | ORDER |

This matter comes before the Court after hearing on Atlas Residential, LLC ("**Movant**") *Motion for relief from the Automatic Stay* [Dkt. No. 9] and *Notice of Motion for Relief from Automatic Stay* [Dkt. No. 10], having been duly served upon Debtor, Debtor's Attorney, the Office of U.S. Trustee, and Chapter 7 Trustee Stanley J. Kartchner.

Desert Valley Steam Cleaning, LLC ("**Debtor**") filed a *Response to Filing Motion for Stay Relief* ("**Response**") [Dkt. No. 20]. The Court held a Preliminary Hearing on December 13, 2017, and a Final Preliminary Hearing on January 18, 2018 at 2:30 p.m. The Court having considering each Party's respective position related to the real property commonly known as 601 North D Street, Eloy, AZ 85131 ("**Property**").

The Court finds as follows:

1.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. §157 (b)(2)(G).

2.    Debtor filed its Chapter 7 bankruptcy petition on November 8, 2017 (the "**Petition Date**").

3.    Sufficient notice of the Motion has been provided and no further notice need be given pursuant to Fed.R.Bankr.P. 2002.

4.    The Chapter 7 Trustee has no objection to modification of the automatic stay as to the Property only and reserves its right to claim certain insurance proceeds tendered to

1    Movant and Victor Granado from State Farm; and that such certain insurance proceeds shall

2    remain in the possession of Movant, Atlas, subject to further Court Order.

3        5.      Movant is in agreement with the Chapter 7 Trustee that it will not dispose of

4    or otherwise use the certain insurance proceeds tendered from State Farm and shall keep

5    them in trust.

6        6.      Debtor's opposition to the Movant's Motion is overruled.

7        7.      Debtor's Schedules and Statements value the Real Property at $275,000.00.

8    The debt owing to Movant under its Note and Deed of Trust, as defined in the Motion, at

9    the time of its Motion was $284,171.65, accumulating interest at the rate of 20%, thereby

10   exceeding the value of the Property scheduled by the Debtor.

11       8.      Chapter 7 Trustee has stipulated there is no equity in the Property for the

12   Bankruptcy Estate.  Therefore, the Court has determined there is no equity for this

13   Bankruptcy Estate.  So, on that basis, the Movant is entitled to relief.

14       9.      That certain insurance proceeds tendered from State Farm to Movant and

15   Victor Granado shall remain in Atlas's possession, held in trust, until the issue is resolved

16   either by resolution or further order of this Court.

17       IT IS HEREBY ORDERED that

18   A.      All stays and injunctions, including the automatic stays imposed by the U.S.

19           Bankruptcy Code 362(a) are hereby vacated as to the Movant with respect to

20           that certain real property more particularly described as follows:

21               LOTS 1, 2, 3, & 4, BLOCK 68 OF COTTON CITY PROPER,

22               ACCORDING TO BOOK 2 OF MAPS, PAGE 8, RECORDS OF

23                       PINAL COUNTY, ARIZONA

24   B.      The Property or its address is commonly known as 601 N. D Street, Eloy

25           Arizona 85131; and 603 N. D Street a/k/a 607 N. D Street, Eloy AZ 85131;

26   C.      Movant shall retain the insurance funds, as defined in the Motion, in Movant's

27           trust account pending further order of this Court; and,

28

Case 2:20-ap-00093-BKM    Doc 1-1    Filed 04/10/20    Entered 04/10/20 12:00:23    Desc
                          Exhibit 1-1    Page 89 of 112

1    D.    Granting relief from stay effective 14 days after entry of this order, pursuant

2          to Fed. R. Bankr. P. 4001(a)(3).

3                        **SIGNED AND DATED AS SET FORTH ABOVE**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 9

RECORDING REQUESTED BY JAMIE GRANADO

OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
VIRGINIA ROSS

DATE/TIME: 06/25/2018 1530
FEE: $15.00
PAGES: 2
FEE NUMBER: 2018-047793

WHEN RECORDED MAIL TO

607 N D st #1
Eloy AZ 85131

*SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## QUITCLAIM DEED

For valuable consideration, receipt of which is hereby acknowledged, on 03/9/18, Desert Valley Steam "Carpet Cleaning" LLC, do hereby quitclaim to Jamie Granado.

the following real property situated in Pinal County, Arizona:

*** See "Exhibit A" attached hereto and made a part hereof ***

Dated: 3 / 9 / 18

| | |
|---|---|
| N/A | N/A |
| Signature | Signature |

Desert Valley Steam Carpet Cleaning LLC, an Arizona Limited Liability Company

By _Victor Granado_
Victor Granado, Manager

State of Arizona
County of Maricopa

The foregoing instrument was acknowledged before me
by Victor Granado

_____
Notary Public

My commission expires: 02-25-2020

Steven Golden
Notary Public
Maricopa County, Arizona
My Comm. Expires 2-25-2020

Exhibit "A"

Lots 1, 2, 3 and Lot 4, Block 68, of COTTON CITY PROPER, According to the Plat of record in the office of the County Recorder of PINAL County, Arizona, Recorded in Book 2 of Maps, Page 8.



Unofficial

# EXHIBIT 10

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** | **Chapter 7** |
| **DESERT VALLEY STEAM CARPET CLEANING LLC,** | **Case No. 4:17-bk-13309-SHG** |
| **Debtor.** | **ORDER** |

This matter comes before the Court after hearing on Atlas Residential, LLC ("**Movant or Atlas**") *Motion to Authorize Use of Insurance Proceeds and Relief from the Automatic Stay regarding Insurance Proceeds* [Dkt. No. 42] and *Notice of Motion to Authorize Use* [Dkt. No. 43], having been duly served upon Debtor, Debtor's Attorney, the Office of U.S. Trustee, and Chapter 7 Trustee Stanley J. Kartchner ("**Trustee**").

The Chapter 7 Trustee ("Trustee") filed a *Response to the Motion to Authorize Use* [Dkt. No. 44] and a *Motion to Substantively Consolidate Bankruptcy Cases*, Case No. 4:17-bk-14574-BMW [Dkt. No. 47] and *Notice of Motion to Substantively Consolidate Bankruptcy Cases* [Dkt. No. 48] which were duly served upon Debtor, Debtor's Attorney and Movant.

Movant filed its *Reply in Support of the Motion to Authorize Use* [Dkt. No. 49] and *SurReply* [Dkt. No. 59] and an *Objection to the Trustee's Motion to Consolidate Bankruptcy Cases* [Dkt. No. 51].

Desert Valley Steam Cleaning, LLC ("**Debtor**") filed a *Response to the Motion to Authorize Use* [Dkt. No. 57] and then filed a *Notice of Withdraw of it Response* [Dkt. No. 58].

The Court held a Hearing on May 16, 2018 at 3:00 p.m. The Court considered

1  each Party's respective position related to the insurance proceeds remitted from State

2  Farm after a fire that occurred on March 10, 2017 at the Real Property commonly

3  known as 601 North D Street, Eloy, AZ 85131 ("**Property**") and consolidation.

4        The Court finds as follows:

5        1.     The Court has jurisdiction of this matter pursuant to 28 U.S.C. §157

6  (b)(2)(G).

7        2.     Debtor filed its Chapter 7 bankruptcy petition on November 8, 2017 (the

8  "**Petition Date**").

9        3.     Sufficient notice of both Motions was provided and no further notice need

10  be given pursuant to Fed.R.Bankr.P. 2002.

11        4.     The Court recounts the argument of the Trustee and the argument of the

12  Debtor; the Court reviews the specific provisions of the deed of trust and the sale and

13  assignment agreement between KS StateBank and Atlas. The Court also cites the case

14  law that it applied in determining the matter: *In re McLean Industries, Inc*, 132 B.R.

15  271 (1991), *In re Endresen*, 548 B.R. 258 (BAP 9th Cir. 2016), and *Valley Nat. Bk v.*

16  *Cotton Growers Hail Ins.,* 155 Ariz. 526, 747 P.2d 1225 (1987).

17        5.     The Court finds that Atlas has a security interest in the insurance

18  proceeds both by virtue of the deed of trust and the insurance policy itself, the sale and

19  assignment agreement entered into between KS StateBank and Atlas which is

20  supported in the record by the exhibits to the *Motion to Authorize Use of Insurance*

21  *Proceeds.*

22        6.     The Trustee does not agree that the Movant has a security interest in the

23  insurance proceeds because the deed of trust is in the name of Debtor but the

24  insurance policy is in the name of Victor Granado.

25        7.     The Court finds the policy in Victor Granado's name as the insured has no

26  bearing on the issue. The Court finds the actual equitable interest lies with KS

27  StateBank and was assigned to Atlas. The borrower was Debtor but the guarantor of

28

1  the obligation who took out the insurance policy was the guarantor of the debt. The
2  insurance proceeds are not property of the bankrupt estate, it is actually property that
3  is owned and is part of the security of Atlas.

4      8.    The Court further finds that the Trustee has not demonstrated there is
5  any evidence that the Debtor here and Victor Granado in Case No. 4:17-bk-14574-
6  BMW are in actuality a "single economic unit" and the entanglement requirement set
7  forth in *Alexander v. Compton* (In re Bonham, 229 F.3d 750 (9th Cir. 2000) has not been
8  met. The Debtor has no unsecured creditors while the Granado case has several
9  consumer debts but none listed as corporate obligations owed by Desert Valley Steam
10  Carpet Cleaning, LLC. A review of the schedules filed by Granado demonstrates the
11  debts are consumer debts, not business debts owed to creditors of the corporate
12  debtor. The Trustee's requested relief only serves to prejudice Atlas without
13  justification as to why their claim should be diluted to pay Granado's personal debts.

14      IT IS HEREBY ORDERED that

15  A.    The Trustee's and Debtor's Objections to Atlas's request for authority to
16      use the insurance proceeds are overruled. The insurance proceeds are
17      property of this bankruptcy estate and they are not property of Mr.
18      Granado's individual bankruptcy estate;

19  B.    Atlas's Motion to Authorize Use of Insurance Proceeds and Relief from the
20      Automatic Stay regarding Insurance Proceeds is granted. The insurance
21      proceeds belong to Atlas;

22  C.    The Trustee's Motion to Substantively Consolidate Bankruptcy Cases, this
23      Debtor with Mr. Granado's case, Case No. 4:17-bk-14574-BMW is denied.

24      **SIGNED AND DATED AS SET FORTH ABOVE**

25

26

27

28

FILED
AMANDA STANFORD
CLERK OF SUPERIOR COURT

2018 AUG -3 PM 2: 47

BY_____
TCG
DEPUTY

1  CYNTHIA L. JOHNSON, (Bar No. 014492)
2  Law Office of C.L. Johnson
   11640 East Caron Street
3  Scottsdale, AZ 85259
   Phone: (480) 381-7929
4  Fax: (480) 614-9414

5  Email: cynthia@jsk-law.com

6
   *Attorney for Atlas Residential, LLC*
7

8       **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9            **IN AND FOR THE COUNTY OF PINAL**

10
   ATLAS RESIDENTIAL, LLC,                    Case No. CV 201801357
11
                          Plaintiff,
12
   v.
13
                                             **ORDER SETTING ORDER TO SHOW**
14 DESERT VALLEY STEAM "CARPET                **CAUSE HEARING**
   CLEANING" LLC; VICTOR GRANADO a/k/a
15 VICTOR LAZADO GRANADO and JANE DOE
   GRANADO; JAMIE GRANADO and JANE DOE
16 GRANADO,                                   **STEVEN J. FULLER**
17
                          Defendants.
18

19

20      TO THE DEFENDANTS: DESERT VALLEY STEAM "CARPET CLEANING" LLC;
21
   VICTOR GRANADO a/k/a VICTOR LAZADO GRANADO and JANE DOE GRANADO;
22
   JAMIE GRANADO and JANE DOE GRANADO, hereof the Defendants, you and each of
23
24 you are ordered to appear on Aug 14th ___, 2018 at 10:00 o'clock in Courtroom
25
   ___ of the Pinal County Superior Court located at 971 Jason Lopez Circle, Florence,
26
27 AZ 85132, and show cause why the Court should not issue a preliminary injunction

28

                                   -1-

pending final adjudication of the above entitled action compelling specific performance as follows:

An Order Compelling Specific Performance for these Defendants, and their successors and assigns, to relinquish their possession and control of the real property commonly known as and located at 601 North D Street, Eloy, AZ 85131; and 603 North D Street a/k/a 607 North D Street, Eloy, AZ 85131 (the "Real Property") to Atlas Residential LLC; and not attempt to contact, collect rental moneys from, or otherwise interfere with any tenants now or in the future residing at the Real Property; Further, the Defendants are enjoined from recording any other deeds on the property at the Office of the Pinal County Recorder's Office; and shall return personal property (construction equipment) taken from the property; until such a time that an Order to Show Cause Hearing can be held on the Plaintiff's Application for Preliminary Injunction.

DATED this 3 day of August, 2018.

By: _____
Judge of the Superior Court

-2-

FILED
Amanda Stanford
CLERK, SUPERIOR COURT
08/03/2018 3:56PM
BY: EMARISCAL
DEPUTY

Patrick R. MacQueen, No. 024461
Benjamin L. Gottlieb, No. 028106
Brandon C. Holub, No. 030533
**MACQUEEN & GOTTLIEB, PLC**
Two North Central Avenue, Suite 1800
Phoenix, Arizona 85004
(602) 533-2840
patrick@mandglawgroup.com
ben@mandglawgroup.com
docket@mandglawgroup.com
*Attorneys for Plaintiffs*

Case No.: S1100CV201801363
HON.

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| JAMIE GRANADO, an unmarried man; and DESERT VALLEY STEAM (CARPET CLEANING) LLC, an Arizona limited liability company,<br><br>        Plaintiffs,<br><br>vs.<br><br>ATLAS RESIDENTIAL, LLC, an Arizona limited liability company; RONALD B. HERB and JANE DOE HERB, spouses; JOHN DOES I-X; JANE DOES I-X; BLACK CORPORATIONS I-X; WHITE PARTNERSHIPS I-X; and RED LIMITED LIABILITY COMPANIES I-X,<br><br>        Defendants. | Case No. _____<br><br>**VERIFIED COMPLAINT**<br><br>**(Wrongful Foreclosure/Breach of Contract; Temporary, Preliminary, and Permanent Injunctive Relief)** |

Plaintiffs Jamie Granado and Desert Valley Steam (Carpet Cleaning) LLC, (hereinafter collectively as "Plaintiffs"), by and through undersigned counsel, for their Complaint against Defendants Atlas Residential, LLC, and Ronald B. Herb, Jane Doe Herb ("Defendants") allege as follows:

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

## PARTIES, JURISDICTION & VENUE

1.      Jamie Granado, at all times relevant hereto has been a resident of Pinal County, Arizona.

2.      Desert Valley Steam (Carpet Cleaning) LLC, ("Desert Valley") is an Arizona limited liability company with Victor Granado and Jamie Granado ("Granados") as its members.

3.      Victor Granado is Plaintiff Jamie Granado's father.

4.      Upon information and belief, Atlas Residential, LLC, ("Atlas"), an Arizona limited liability company does business in Pinal County, Arizona.

5.      According to the Arizona Corporation Commission, Atlas known place of business is 6250 E. Cheney Dr., Paradise Valley, AZ 85253. Further, and according to the Arizona Corporation Commission, William Max Kidwell, Alfonso Larriva, and Atlas are listed as Managers of Atlas.

6.      Upon information and belief, Ronald B. Herb ("Herb") is an Arizona licensed real estate broker and does business in Pinal County, Arizona.

7.      Upon information and belief, "Jane Doe" Herb is the spouse of Herb and is a resident of Pinal County, Arizona. The acts of Herb complained of herein were undertaken for the benefit of the community and in furtherance of the Herb's marital community.

8.      Upon information and belief, John Does I-X, Jane Does I-X Black Corporations I-X White Partnerships and/or Sole Proprietorships I-X, and Red Limited Liability Companies I-X are individuals or entities who may be responsible, in whole or in part, for Plaintiff's damages. Such defendants' true names are presently unknown to Plaintiff. Plaintiff will amend this Complaint and/or file notices of designations upon discovery of the true names and identities of such parties.

9.      Plaintiff Jamie Granado is the owner of real property located at 601 North D Street, Eloy, Arizona 85131; and 603 North D. Street a/k/a 607 North D. Street, Eloy,

MacQUEEN & GOTTLIEB, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

AZ 85131 (the "Property"), bearing assessor's parcel numbers 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 and 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, respectively with the following legal description:

> LOTS 1, 2, 3, & 4, BLOCK 68 OF COTTON CITY PROPER, ACCORDING TO BOOK 2 OF MAPS, PAGE 8, RECORDS OF PINAL COUNTY, ARIZONA

10.     The Property is located in Pinal County, Arizona.

11.     The transactions and occurrences complained of herein occurred and/or had their principal effect in Pinal County, Arizona.

12.     The Defendants caused events to occur in Pinal County, Arizona, out of which this cause of action arose.

13.     This court has jurisdiction over this matter.

14.     Under Rule 26.2(c)(3), Ariz. R. Civ. P., damages are such as to qualify for Tier 2.

15.     Venue is proper in this Court pursuant to A.R.S. § 12-401.

## **BACKGROUND**

16.     Plaintiffs reallege and incorporates all prior allegations as though fully stated herein.

17.     Desert Valley Steam was the initial borrower of the Property pursuant to a Note (the "Note"), which is secured by a Deed of Trust (the "Deed of Trust"). *See* Deed of Trust, attached hereto as **Exhibit A**.

18.     Specifically, on or about February 26, 2015, Desert Valley executed the Note in the amount of $275,000 with Desert Valley as the Maker and with the KS StateBank ("KS") as the Holders of the Note.

19.     The Note was secured by a Deed of Trust on real property owned by the Desert Valley located at 601 North D Street, Eloy, Arizona 85131; and 603 North D. Street a/k/a 607 North D. Street, Eloy, AZ 85131. *Id*.

20.      The Deed of Trust was recorded with the Pinal County Recorder's Office at recording number 2015-013815. *Id*.

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

MacQUEEN & GOTTLIEB, PLC
TWO NORTH CENTRAL AVENUE
SUITE 1800
PHOENIX, ARIZONA 85004

21.     On or about February 25, 2015, Desert Valley assigned all rents to KS, which was recorded with the Pinal County Recorder's Office at recording number 2015-013816.  *See*, Assignment of Rents, attached hereto as **Exhibit B**.

22.     Throughout 2015 through 2017, Desert Valley continued to make their monthly mortgage payments.

23.     Sometime in March of 2017, there was a fire at the Property causing significant damage to the Property.

24.     Desert Valley's insurance policy paid proceeds to Desert Valley in roughly the amount of $201,000 for the fire damage.

25.     On or around May 3, 2017, the Deed of Trust was assigned from KS to Atlas, which was recorded with the Pinal County Recorder's Office at recording number 2017-031689. *See* Assignment of Beneficial Interest Under Deed of Trust, attached hereto as **Exhibit C**.

26.     Under the Deed of Trust Atlas "may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property." *See*, Deed of Trust, pg. 5, Application of Proceeds, as Exhibit A.

27.     Eager for Atlas to either apply the proceeds to the reduction of Desert Valley's indebtedness or to have Atlas apply it to the restoration of the Property, Desert Valley remitted the insurance proceeds to Atlas.

28.     After the Deed of Trust was assigned to Atlas, Desert Valley made numerous attempts to see if Atlas was going to elect Desert Valley to restore the Property or apply the proceeds to the reduction of the indebtedness.

29.     Desert Valley was also actively trying to obtain the approximate amount of indebtedness owed by Desert Valley under Deed of Trust.

30.     On or around June 15, 2017, Defendants caused to be recorded a Notice of Trustee's Sale, with a Trustee's Sale set to take place regarding the Property on

September 15, 2017, at 11:00 am, with Defendant Herb acting as the Trustee. *See* Notice of Trustee's Sale, attached hereto as **Exhibit D**.

31. The September 15, 2017, Trustee's Sale was wrongful inasmuch as Atlas failed to follow the express terms of the Deed of Trust regarding the application of the insurance proceeds.

32. Under the express terms of the Deed of Trust, Atlas could "… receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property." *See*, Deed of Trust, pg. 5, Application of Proceeds, as Exhibit A.

33. However, if Atlas elected to apply the proceeds to restoration then "… Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds [.]" *Id.*

34. The Deed of Trust further states that "[a]ny proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness." *Id.*

35. The Deed of Trust does not permit Atlas to seize the proceeds without electing either restoration or applying the proceeds to the balance of the Deed of Trust.

36. On or about November 8, 2017, Desert Valley filed a Chapter 7 bankruptcy, case no. 4:17-bk-13309-SHG.

37. Sometime in December of 2017, Atlas filed a Motion for Relief from the Automatic Stay in the Bankruptcy Court and on or about January 24, 2018, the Bankruptcy Court ordered that Atlas retain the insurance proceeds in Atlas' trust account.

38. On or about March 9, 2018, the Property was transferred from Desert Valley to Plaintiff Jamie Granado. *See*, Quitclaim Deed, attached hereto as **Exhibit E**.

MacQUEEN & GOTTLIEB, PLC
TWO NORTH CENTRAL AVENUE
SUITE 1800
PHOENIX, ARIZONA 85004

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

39.     On or about April 6, 2018, the Chapter 7 Trustee filed a Notice of Trustee's Intent to Abandon the Property and on April 20, 2018, the Property was deemed abandoned effective as of the date of the original Chapter 7 filing, November 8, 2017.

40.     When the Bankruptcy Court deemed the Property abandoned, the Property reverted back to Plaintiff Jamie Granado.

41.     Sometime in April of 2018, Atlas filed a Motion to Authorize Use of Insurance Proceeds and Relief from the Automatic Stay regarding Insurance Proceeds with the Bankruptcy Court and on or about May 22, 2018, the Bankruptcy Court found that the insurance proceeds were not property of the bankruptcy estate and that the insurance proceeds belonged to Atlas.

42.     On or about July 3, 2018, the Granados' filed an Emergency Motion for Clarification on Ruling and Affirmation of Jurisdiction Pertaining to Real Property with the Bankruptcy Court and or about July 24, 2018, the Bankruptcy Court clarified its orders by stating that the Property is governed by the loan documents and state law. *See*, Order Clarifying Ruling, attached hereto as **Exhibit F**.

43.     On or about July 31, 2018, the Bankruptcy Court issued a minute entry stating that Atlas has no ownership of the Property and no possessory right to the Property because Atlas has not foreclosed. *See*, 7/21/18 Minute Entry, attached hereto as **Exhibit G.**

44.     Throughout the months of June and July 2018, Atlas caused contractors to be sent the Property to start restoration.

45.     Upon information and belief, these workers were unlicensed contractors.

46.     The unlicensed contractors proceeded to negligently perform unauthorized restorations at the Property.

47.     The unlicensed contractors gutted the Property, installed sinks, water heaters, cabinets, countertops, added new wiring, and negligently removed all the interior walls on the Property. *See*, Pictures of the Property, attached hereto as **Exhibit H**.

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

48.     On or about July 13, 2018, the City of Eloy issued a Stop Work Notice for the Property stating that a building permit was required before any more work could continue. *See*, Stop Work Notice, attached hereto as **Exhibit I**.

49.     Roughly three (3) days after the Stop Work Notice, the Property collapsed due to the negligent construction done at the Property. *See*, Pictures of the Property, as Exhibit H.

50.     Upon information and belief, the negligent construction performed at the Property destroyed roughly fifty (50) percent of the units at the Property.

51.     As a result, Plaintiff was unable to remediate the property.

52.     Due to the collapse at the Property, Plaintiffs now have another insurance claim pending on the Property.

53.     Any new proceeds received from the collapse at the Property, should be governed by the Deed of Trust. *See*, Order Clarifying Ruling as Exhibit F.

54.     Again, Atlas violated the express terms of the Deed of Trust by exceeding its authority under the Deed of Trust by performing the unauthorized restoration work on its own accord.

55.     The Deed of Trust stated that Plaintiffs "shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds [.]"

56.     In further breach of the Deed of Trust, Atlas has applied the proceeds to the restoration and has charged it against the Deed of Trust. *See*, Emails from Ron Herb to Jamie Granado 6/8/18 at 1:19 PM and Alfonso Larriva to Ron Herb, 6/7/18 at 5:30 PM and Payoff Spreadsheet, attached hereto as **Exhibit J**.

57.     The Payoff Spreadsheet is wrongful inasmuch as it fails to account for the insurance proceeds "to the reduction of the Indebtedness" and adds additional costs for the unauthorized restoration work done by Atlas. *Id.*

58.     At the latest, the insurance proceeds should have been applied sometime in October or November of 2017.

59.     Under Deed of Trust, "[a]ny proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness." *See* Deed of Trust, pg. 5, as Exhibit A.

60.     Now, Plaintiffs, through an email by Defendant Herb, has learned that the Trustee Sale may have been postponed to August 14, 2018. *See*, Email from Ron Herb to Jamie Granado, 6/7/18 at 3:50 PM, attached hereto as **Exhibit K**.

61.     By attempting to foreclose on the Property without a proper accounting of the insurance proceeds and by performing unauthorized and negligent restorations at the Property, Defendants have breached the Deed of Trust.

62.     Immediate and irreparable harm is threatened to Plaintiffs if the Property is sold at the supposed Trustee's Sale on August 14, 2018.

63.     Plaintiffs need injunctive relief, at a minimum, postponing the Trustee's Sale pending resolution of this lawsuit.

## COUNT I – WRONGFUL FORECLOSURE/BREACH OF CONTRACT

### (Against All Defendants)

64.     Plaintiffs reallege and incorporates by reference as though fully set forth herein all previous allegations contained in the Verified Complaint.

65.     Defendants have breached the Deed of Trust by misappropriating the insurance proceeds, by wrongfully failing to account for the proceeds towards the principal balance of the Deed of Trust, and by the unauthorized and negligent restoration on the Property on its own accord.

66.     As alleged herein, Defendants could receive and retain the proceeds and apply the proceeds to the reduction of the indebtedness or apply the proceeds to the

MacQUEEN & GOTTLIEB, PLC
TWO NORTH CENTRAL AVENUE
SUITE 1800
PHOENIX, ARIZONA 85004

restoration and repair of the Property. However, if Defendants elected to apply the proceeds to restoration, Plaintiffs were to restore the Property and seek reimbursement.

67. A.R.S. § 33-807(A) confers a duty upon the trustee of a trust deed to only sell the property at issue after a breach or default.

68. As alleged herein, Defendants' have breached the Deed of Trust to the detriment of the Plaintiffs and Defendants cannot proceed with a trustee's sale in good faith or consistent with Arizona law.

69. Therefore, Defendants should be estopped from conducting the Trustee's Sale on August 14, 2018.

70. As a direct and proximate consequence of Defendants' actions, Plaintiffs will be damaged, which will include the loss of the Property.

WHEREFORE, Plaintiffs request that this Court enter Judgment against Defendants as follows:

a. An order directing Defendants to cancel the Trustee's Sale set for August 14, 2018, or alternatively, an order postponing the Trustee's Sale pending resolution of this lawsuit;

b. Awarding Plaintiffs their reasonable attorney's fees and costs incurred herein, which in the event of default shall be no less than $5,000;

c. For such other and further relief this Court deems just and appropriate; and

d. That injunctive relief be granted enjoining Defendants and their officers, agents, servants, employees and attorneys, and persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, hereby restraining them from conveying title to the Property during the pendency of this action, and from initiating any action for possession against Plaintiff.

## COUNT II – TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF
### (Against All Defendants)

71. Plaintiffs reallege and incorporates herein by reference all of the foregoing paragraphs of this Complaint.

72. Based on the foregoing, Plaintiffs are without an adequate remedy at law as the Deed of Trust property is scheduled to be auctioned off at the Trustee's Sale on August 14, 2018, and the issuance of a temporary restraining order and preliminary and permanent injunction will preserve the status quo during the pendency of this action.

WHEREFORE, Plaintiffs prays for Judgment against Defendants as follows:

a. An order directing Defendants to cancel the Trustee's Sale set for August 14, 2018, or alternatively, an order postponing the Trustee's Sale pending resolution of this lawsuit;

b. Awarding Plaintiffs their reasonable attorney's fees and costs incurred herein, which in the event of default shall be no less than $5,000;

c. For such other and further relief this Court deems just and appropriate; and

d. That injunctive relief be granted enjoining Defendants and their officers, agents, servants, employees and attorneys, and persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, hereby restraining them from conveying title to the Property during the pendency of this action.

DATED this 3rd day of August 2018.

**MACQUEEN & GOTTLIEB, PLC**

/s/ Brandon C. Holub
Patrick R. MacQueen
Benjamin L. Gottlieb
Brandon C. Holub
Two North Central Avenue, Suite 1800
Phoenix, Arizona 85004
*Attorneys for Plaintiff*

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 1800
Phoenix, Arizona 85004

1

2 **VERIFICATION**

3    1.    I, Jamie Granado, am the Plaintiff in the foregoing action.

4    2.    I have read the foregoing Verified Complaint and related filings, and know

5 the contents thereof.

6    3.    The same is true of my own personal knowledge except as to those

7 statements made upon information and belief, and as to those, I believe them to be true;

8 and

9    4.    I verify under penalty of perjury that the foregoing is true and correct.

10

11 EXECUTED on this 3ʳᵈ day of August, 2018.

12 _____

13                                                           Jamie Granado

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

1.     I, Jamie Granado, am the managing member of Desert Valley Steam (Carpet Cleaning) LLC.

2.     I have read the foregoing Verified Complaint and related filings, and know the contents thereof.

3.     The same is true of my own personal knowledge except as to those statements made upon information and belief, and as to those, I believe them to be true; and

4.     I verify under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 3rd day of August, 2018.

Jamie Granado

MacQueen & Gottlieb, PLC
Two North Central Avenue
Suite 2600
Phoenix, Arizona 85004

12

FILED
AMANDA STANFORD
CLERK OF SUPERIOR COURT

2018 AUG -6 PM 5:28

BY
TCG
DEPUTY



# IN THE SUPERIOR COURT OF ARIZONA
## PINAL COUNTY

JAMIE GRANADO, et al.,

vs.

ATLAS RESIDENTIAL, LLC., et al.

)
)
)
)
)
)
)
)
)
)

Case No: CV201801363

### Notice of Hearing

A Hearing, in the above entitled action, has been set for:

Date: Tuesday, August 7, 2018      at   10:00   a.m./p.m.

Place:   Pinal County Justice Complex
971 Jason Lopez Circle, Building A
Florence, AZ

Before:   Hon. Steven S. Fuller

AMANDA STANFORD
Clerk of the Superior Court

By _____
Deputy Clerk